IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

SOUND FOUNDATION, a foreign
corporation,

                       Plaintiff,

     v.

SCI Fund II, LLC, a Delaware limited
liability company, and HERBERT P.
WILKINS, JR., a Maryland resident,

                    Defendants.

No. 3:20-cv-01190-HZ

OPINION & ORDER

Britta E. Warren
Colin G. Andries
Black Helterline LLP
805 SW Broadway, Suite 1900
Portland, OR 97205

      Attorneys for Plaintiff

1 – OPINION & ORDER

Shannon Armstrong
Kristin Asai
Alex Hadduck
Holland & Knight LLP
601 SW Second Ave., Suite 180
Portland, OR 97204

    Attorneys for Defendants

HERNÁNDEZ, District Judge:

    Plaintiff Sound Foundation brings six claims against SCI Fund II, LLC ("Defendant Fund II") and Herbert P. Wilkins, Jr. ("Defendant Wilkins"), individually and collectively. Against Defendant Fund II, Plaintiff brings a breach of contract claim. Against Defendant Wilkins, Plaintiff alleges securities violations under Oregon Revised Statute ("O.R.S.") §§ 59.115(1)(b) & 59.115(3), and securities fraud under O.R.S. §59.135. Against both Defendants, Plaintiff brings claims for fraudulent transfer under the Uniform Fraudulent Transfer Act, O.R.S. 95.200 *et seq.* and unjust enrichment.

    Defendants move to dismiss all claims for lack of personal jurisdiction. Defs.' Second Mot. to Dismiss at 1, ECF 34. Alternatively, Defendants move to dismiss all claims for failure to state a claim, except the breach of contract claim. *Id*. For the following reasons, the Court grants in part and denies in part Defendant's Second Motion to Dismiss.

## BACKGROUND

    This case concerns an unpaid promissory note between Plaintiff Sound Foundation and Defendant Fund II. Plaintiff is a foreign corporation registered in the Cook Islands founded by Dennis and Derek Sivers. Pl.'s First Am. Compl. ("Am. Compl.") ¶¶ 2, 9. During the period relevant to this motion, Dennis Sivers lived in Oregon and his son, Derek Sivers, lived outside of the United States. *Id*. at ¶ 9; Supp. Warren Decl. Ex. 1 ("Wilkins Dep.") at 31:14-20.

Defendant Herbert P. Wilkins is a Maryland resident. Am. Compl. ¶ 4; Wilkins Dep. at 7:16-20. He is the managing director of SCI Management, Inc. ("SCI Management"), a venture capital management firm based in Delaware. Asai Decl. Ex. 2; Wilkins Dep. at 8:14-9:3. He does not own property in Oregon and does not have an address, professional license, or bank account in Oregon. Declaration of Herbert Wilkins ¶ 3 ("Wilkins Decl."), ECF 24. SCI Management manages three separate investment portfolios: SCI Management, LLC ("Fund I"), SCI Fund II, LLC (Defendant Fund II), and SCI Fund III, LLC ("Fund III") (collectively "SCI Funds"). Wilkins Dep. 11:10-12:1; 15:23-16:3.

Defendant SCI Fund II is a venture capital fund registered in Delaware. *Id*. 9:6-8; 9:18-10:21; Am Compl. ¶ 3; Asai Decl. Ex. 3, ECF 35-3. It has an investment portfolio comprised of multiple companies. Wilkins Dep. 9:6-8; 9:18-10:21. One of those is Maya Cinemas, a California corporation. *Id*. 10:14-20. Defendant Wilkins and Dennis Sivers are board members of Maya Cinemas. *Id*. 16:16-20.

In January 2017, Defendant Wilkins contacted Dennis Sivers to ask if his son Derek Sivers would loan money to Defendant Fund II. Am Compl. ¶ 8. Derek Sivers had lent money to Maya Cinemas in the past. Wilkins Dep. 39:3-5, 17:12-17. Dennis Sivers told Defendant Wilkins to "give [Derek Sivers] a call and ask him." *Id.* 17:10-20. Defendant Wilkins has never met Derek Sivers. *Id*. 48:3-5. The two have only communicated via phone and email. *Id.* 17:6-9.

Derek Sivers agreed to loan Defendant Wilkin's venture capital fund, Defendant Fund II, $700,000. Am. Compl. ¶ 10. Derek's father, Dennis, facilitated the transaction from Oregon. Supp. Warren Decl. Ex. 5. The parties memorialized this agreement in a promissory note on January 10, 2017. Am. Compl. ¶ 10. The Note listed Derek Sivers as payee and Defendant Fund II as debtor. *Id*.; Am. Compl. Ex. 1 ("Promissory Note") at 1. The Promissory Note lists Derek

Sivers with a Portland, Oregon address, and Defendant Fund II with a Baltimore, Maryland address. Promissory Note at 4. Defendant Wilkins signed the Promissory Note as managing member of Defendant Fund II.  *Id*. The Promissory Note listed "Portland, OR" in the top right-hand corner, stated that Defendant Fund II was to pay Derek Sivers "at such address" listed "or at such other place as may be designated," contained a Choice of Law clause stating that the note "shall be governed and construed under the laws of Oregon," and that all remedies for default shall be provided by Oregon Law. Promissory Note, 1-4.

Derek Sivers wire transferred $700,000 to Defendant Fund II the same day they executed the Promissory Note. Am. Compl. ¶ 11. Defendant Fund II secured the loan by providing Derek Sivers with shares in Maya Cinemas stock. Promissory Note at 2. Defendant Fund II agreed to pay Derek Sivers the loan back, plus interest, on or before January 10, 2018. *Id.* at 1.

The same day Derek Sivers and Defendant Wilkins signed the Promissory Note, Defendant Wilkins executed a promissory note between Defendant Fund II and Fund III for $700,000. Am. Compl. ¶ 12. Defendant Wilkins then transferred the $700,000 to Fund III. Am. Compl. ¶ 12; Wilkins Dep. 39:3-9; 40:24-41:19. Fund III then made staggered investments into a Delaware holding company, Morris Medical, LLC, ("Morris Medical"). *Id.* 43:2-25. Morris Medical is the holding company for Morris Medical Oregon, LLC ("Morris Oregon"), another Delaware company. *Id*. 42:3-11. Morris Medical then transferred the money to Morris Oregon. *Id*. 39:10-13; 42:3-11. Morris Oregon then invested those funds into Trellis Holdings OP – 3242 NE 82nd Avenue, LLC ("Trellis"), an Oregon company that holds cannabis investments in

Oregon. *Id*. 12:20-14:4; 42:6-8. Over five months, Fund III invested the entire $700,000 into

Trellis. *Id*. 37:16-38:10; Asai Decl. Ex. 6.[1]

In February 2018, Defendant Wilkins requested more time to repay the loan. Am.

Compl. ¶ 14. Derek Sivers agreed to extend the repayment deadline. Am. Compl. ¶ 15. The

parties executed another promissory note to memorialize the extension. *Id*.; Ex. 2 ("Amended

Note"). The Amended Note replaced the original Promissory Note and extended Defendant Fund

II's time to repay the loan to December 31, 2018. Am. Promissory Note at 1. In all other

respects, the Amended Note contained the same provisions and information as the original

Promissory Note, including the references to Oregon state. *See* Am. Promissory Note.

Afterward, Defendant Wilkins sent Derek Sivers quarterly updates on the operations and

performance of the cannabis companies that Derek Sivers' funds were invested into. Supp.

Warren Decl. Ex. 4; Declaration of Derek Sivers, Ex. A, ECF 21-1. Each update included a

section on investments in Oregon state. *Id.* The last quarterly update occurred on September 30,

2019. Supp. Warren Decl. Ex. 4 at 15.

Defendants failed to repay the loan by the amended deadline. Am Compl. ¶ 24. Plaintiff

alleges that Defendant Wilkins, through Fund III, used the entire $700,000 to invest in cannabis

companies in Oregon and Maryland, which caused Defendant Fund II to have insufficient funds

to repay its obligation. *Id*. ¶¶ 13-14.

On or about January 29, 2020, Derek Sivers assigned his rights, titles, and interests in the

Amended Note and in Defendant Fund II's collateral stock shares to Plaintiff Sound Foundation.

---

[1] A diagram of these transactions provided by Plaintiff is attached as Appendix A to this Opinion and Order. The Court notes that Defendants object to the accuracy of this diagram because it suggests that Defendant Wilkins is the only director of SCI Management when there are three directors.

Am. Compl. ¶¶ 22, 23; Am. Compl. Ex. 3. Defendant Wilkins signed the Assignment of Debt

Agreement. Am. Compl. Ex. 3 at 3. The Agreement also includes an Oregon choice of law

provision. *Id.*

Plaintiff Sound Foundation filed its initial Complaint in July 2020 alleging breach of

contract and unjust enrichment against Defendant Fund II only. Complaint ("Compl.") 1, ECF 1.

Plaintiff named Defendant Wilkins in its Amended Complaint after settlement discussions with

Defendant Fund II failed. Am. Compl. 1. Unopposed Mot. for Extension to Resp. to Compl. at 2,

ECF 6; Unopposed Mot. for Extension to Resp. to Compl. at 2, ECF 8. Defendants moved to

dismiss Plaintiff's Amended Complaint for lack of personal jurisdiction and Defendant Wilkins

alternatively moved to dismiss the Amended Complaint for failure to state a claim. Def. Fund

II's Mot. Dismiss for Lack of Jurisdiction, ECF 14; Def. Wilkins' Mot. Dismiss for Lack of

Jurisdiction and Failure to State a Claim, ECF 23. Plaintiff opposed both motions and requested

jurisdictional discovery to address personal jurisdiction issues. Pl.'s Resp. to Def. Fund II's First

Mot. Dismiss at 15, ECF 19.

The Court granted Plaintiff's request and struck Defendants' initial motions to dismiss.

Order, ECF 31. The parties conducted jurisdictional discovery and Defendants jointly renewed

their motions to dismiss. Defs.' Second Mot. Dismiss. Plaintiff opposes Defendants' motions.

Pl.'s Resp. to Defs.' Second Mot. Dismiss ("Pl.'s Resp."), ECF 39.

//

//

//

//

//

**DISCUSSION**

I.      **Motion to Dismiss for Lack of Personal Jurisdiction**

A.      **Standards**

Under Federal Rule of Civil Procedure 12(b)(2), a defendant may move for dismissal on

the grounds that the court lacks personal jurisdiction. Plaintiff has the burden of showing

personal jurisdiction. *Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008).

> If the district court decides the motion without an evidentiary hearing, which is the
> case here, then the plaintiff need only make a prima facie showing of the
> jurisdictional facts.  Absent an evidentiary hearing this court only inquires into
> whether the plaintiff's pleadings and affidavits make a prima facie showing of
> personal jurisdiction.  Uncontroverted allegations in the plaintiff's complaint must
> be taken as true.  Conflicts between the parties over statements contained in
> affidavits must be resolved in the plaintiff's favor.

*Id*. (citations, internal quotation marks, and brackets omitted).

In diversity cases, the court looks to the law of the state in which it sits to determine

whether it has personal jurisdiction over the non-resident defendant. *W. Helicopters, Inc. v.

Rogerson Aircraft Corp.*, 715 F. Supp. 1486, 1489 (D. Or. 1989); *see also Boschetto*, 539 F.3d at

1015 ("When no federal statute governs personal jurisdiction, the district court applies the law of

the forum state.").

Oregon Rule of Civil Procedure (ORCP) 4 governs personal jurisdiction issues in

Oregon. Because Oregon's long-arm statute confers jurisdiction to the extent permitted by due

process, *Gray & Co. v. Firstenberg Mach.* Co., 913 F.2d 758, 760 (9th Cir. 1990) (citing ORCP

4L; and *Oregon ex rel. Hydraulic Servocontrols Corp. v. Dale*, 294 Or. 381, 657 P.2d 211

(1982)), the court may proceed directly to the federal due process analysis. *See Harris Rutsky &

Co. Ins. Servs. v. Bell & Clements Ltd*., 328 F.3d 1122, 1129 (9th Cir. 2003) (when state long-

arm statute reaches as far as the Due Process Clause, the court need only analyze whether the

exercise of jurisdiction complies with due process); *see also Millennium Enters., Inc. v. Millennium Music, LP*, 33 F. Supp. 2d 907, 909 (D. Or. 1999) (because Oregon's catch-all jurisdictional rule confers personal jurisdiction coextensive with due process, the analysis collapses into a single framework and the court proceeds under federal due process standards).

To comport with due process, "the nonresident generally must have 'certain minimum contacts [with the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Walden v. Fiore*, 571 U.S. 277, 283 (2014) (quoting *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945)). The forum state may exercise either general or specific jurisdiction over a non-resident defendant. *Boschetto*, 539 F.3d at 1016.

### B.    Analysis

Defendants argue that this Court lacks personal jurisdiction over them because Plaintiff cannot show the necessary contacts with Oregon to subject Defendants to personal jurisdiction in Oregon. Defs.' Second Mot. Dismiss 1. Plaintiff Sound Foundation contends that this Court has specific jurisdiction over Defendant Wilkins and that it may exercise personal jurisdiction over Defendant Fund II because it may impute Defendant Wilkins's contacts to Fund II under an alter-ego theory. Pl.'s Resp. at 9. Plaintiff does not argue Defendants are subject to general jurisdiction. The Court thus begins by analyzing specific jurisdiction.

The plaintiff bears the burden of making a prima facie showing of personal jurisdiction. *Boschetto*, 539 F.3d at 1015. "[U]ncontroverted allegations in [the plaintiff's] complaint must be taken as true, and conflicts between the facts contained in the parties' affidavits must be resolved in [the plaintiff's] favor." *Rio Props., Inc. v. Rio Int'l Interlink,* 284 F.3d 1007, 1019 (9th Cir. 2002). "[A]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant

or declarant is competent to testify on the matters stated." *Mulato v. Wells Fargo Bank, N.A.,* 76 F. Supp. 3d 929, 946 (N.D. Cal. 2014).

A court has specific personal jurisdiction where "the defendant has purposefully directed his activities at residents of the forum, and the litigation results from alleged injuries that arise out of or relate to those activities." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985) (internal quotation marks and citations omitted).

The Ninth Circuit uses a three-part test to determine whether an out-of-state defendant has sufficient minimum contacts to be subject to specific personal jurisdiction:

(1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;

(2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and

(3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e., it must be reasonable.

*Picot v. Weston*, 780 F.3d 1206, 1211 (9th Cir. 2015) (*quoting Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004)). The plaintiff bears the burden on the first two parts of the test. *Id.* If the plaintiff succeeds, "the burden shifts to the defendant to 'set forth a "compelling case" that the exercise of jurisdiction would not be reasonable.'" *Id.* at 1212 (quoting *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1076 (9th Cir. 2011)). The first prong of the Ninth Circuit's test to establish specific jurisdiction can be satisfied in two ways: either the non-resident defendant must purposefully direct his activities at the forum state, or the defendant must purposefully avail himself of the privilege of conducting activities in the forum. *Picot*, 780 F.3d at 1212. Purposeful availment is most often applied to contract claims, while purposeful direction is most often applied to tort claims. *Id.* (citing *Schwarzenegger*, 374 F.3d at 802). Here, Plaintiff brings contract and tort claims. The thrust of Plaintiff's case

concerns a breach of contract claim. Accordingly, the Court begins by analyzing whether it has personal jurisdiction over Defendants based on Plaintiff's contract claim.

### i.    Purposeful Availment

The purposeful availment test for contract claims analyzes "whether a defendant has 'purposefully availed [itself] of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" *Picot*, 780 F.3d at 1212 (quoting *Schwarzenegger*, 374 F. 3d at 802). A defendant purposefully avails itself of conducting activities within the forum if it performed some type of affirmative conduct that allows or promotes the transaction of business within the forum state. *Burger King*, 471 U.S. at 475 (noting that the relationship with the forum "must arise out of contacts that the defendant *himself* creates with the forum") (emphasis in original).

Plaintiff can show that a defendant purposefully availed itself of the "privilege of doing business in a forum" by producing "evidence of defendant's actions in the forum, such as executing or performing a contract there." *Schwarzenegger*, 374 F.3d at 802. But "a contract alone does not automatically establish minimum contacts in the plaintiff's home forum." *Boschetto*, 539 F.3d at 1017. This is true even when parties include choice-of-law provisions in a contract because courts should also consider "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing." *Burger King*, 471 U.S. at 478–479, 482.

In *Burger King*, the Supreme Court found personal jurisdiction in Florida over an out-of-state defendant-franchisee who contracted with a Florida corporation. 471 U.S. at 479. First, the Court found a "substantial connection" to Florida because the defendant negotiated the franchise agreement with plaintiff for a long-term franchise and the benefits derived from the contract. *Id*.

The contract involved a "carefully structured 20-year relationship that envisioned continuing and wide-reaching contacts," and the Court held that the "quality and nature" of this relationship could "in no sense be viewed as random, fortuitous, or attenuated." *Id* (quotations and citations omitted). Next, the Court found that the defendant's actions caused foreseeable injuries to the plaintiff. *Id*. Finally, the agreement between the parties contained a Florida choice-of-law provision and an arbitration provision that provided for binding arbitration in Miami, Florida. *Id*. at 483. The combination of these factors demonstrated the defendant's "deliberate affiliation" with Florida and the "reasonable foreseeability of possible litigation there." *Id*. at 482.

In analyzing Defendants' contacts with respect to Plaintiff's contract claim, the Court relies on the *Burger King* factors to guide its analysis. These are: "prior negotiations and contemplated future consequences," "the terms of the contract and the parties' actual course of dealing." *Picot*, 780 F.3d at 1212 (quoting *Burger King*, 471 U.S. at 479).[2]

---

[2] Plaintiff asks the Court to impute Defendant Wilkins contacts to Defendant II using alter ego principles. Defendant Wilkins is a managing member of Defendant Fund II and a "managing director of SCI Management," which "manages Fund II." Wilkins Decl. ¶ 3; Def. Mot. to Dismiss at 3. He is thus an agent of Defendant Fund II and acts on its behalf. *See* James D. Cox and Thomas Lee Hazen, 1 Treatise on the law of Corporations § 1:11 (3rd ed. December 2020 Update) ("[I]n member-managed LLCs, each of the members is an agent of the LLC and has the authority to bind it in the ordinary course of business.") Accordingly, where appropriate the Court considers Defendant Fund II as acting through its agent, Defendant Wilkins. The Supreme Court explained this well-established rule in *Daimler*: "Agency relationships, we have recognized, may be relevant to the existence of specific jurisdiction. '[T]he corporate personality,' *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), observed, 'is a fiction, although a fiction intended to be acted upon as though it were a fact.' *Id.*, at 316, 66 S.Ct. 154. *See generally* 1 W. Fletcher, Cyclopedia of the Law of Corporations § 30, p. 30 (Supp.2012–2013) ("A corporation is a distinct legal entity that can act only through its agents."). As such, a corporation can purposefully avail itself of a forum by directing its agents or distributors to take action there. *Daimler AG v. Bauman*, 571 U.S. 117, 135 n. 13 (2014) (citations omitted)." Thus, the Court need not rely on alter-ego principles to attribute Defendant Wilkins contacts to Defendant Fund II, when the facts support that he was acting on behalf of Defendant Fund II.

11 – OPINION & ORDER

The parties' prior negotiations support and cut against a finding of personal jurisdiction. Neither party is a resident of Oregon and they negotiated the terms of the Note by email and phone. However, Dennis Sivers facilitated the negotiations from Oregon. Wilkins Dep. 31:15-16. Dennis Sivers, and his staff, drafted the terms and conditions of the Note. Emails show Oregon resident Dennis Sivers communicated directly with Defendant Wilkins to finalize the terms. Wilkins Dep. at 75-76; Supp. Warren Decl. Ex. 3. Derek Sivers is not copied on these negotiation emails, though he was sent a final draft to review. *Id.*

Evidence of the parties' contemplated future consequences suggests Defendants solicited the funds from Derek Sivers with the intention that they would be invested in Oregon-based businesses. The parties' original intention was for Derek Sivers to loan funds to Morris Medical. Wilkins Dep. 31:18-20; Supp. Warren Decl. Ex. 3 at 4-6. Morris Medical, LLC is based in Maryland and is the sole member of Morris Medical, LLC, Oregon. Wilkins Dep. 31:22-32:2. Morris Medical is a holding company for cannabis investments, including the Oregon based Trellis entities. *Id.* 12:20-13:6. Ultimately, Morris Medical did not have sufficient assets to collateralize the loan and Defendant Fund II became the debtor on the Note instead. *Id.* 31:18-20; 42:13-17. A 2018 email from Defendant Wilkins to Derek Sivers states: "The purpose of that loan was to bridge an investment in two cannabis companies that the company was making. We have completed both of those investments and both companies, after some delays, are operating in their respective states." Sivers Decl. Ex. A at 1. It then proceeds to provide an update on an Oregon investment and a Maryland investment. *Id.* at 1–2.

The terms of the contract suggest that Defendant Wilkins and Defendant Fund II understood that they would have continuing contacts in Oregon. The Amended Note listed Derek Sivers' address in Portland, Oregon, it instructed Defendants to pay Derek Sivers at the listed

Oregon address, and contained Oregon choice-of-law provisions. *See Burger King Corp.*, 471

U.S. at 482 (finding that although a choice of law provision alone does not establish jurisdiction,

it supports finding "deliberate affiliation with the forum State and the reasonable foreseeability

of possible litigation there"). That the Original and Amended Note provided an Oregon

repayment address strongly supports finding jurisdiction. While the agreement indicated that the

location of the payment could be changed, no party designated a different address for repayment.

Defendants knowingly entered an agreement that required repayment in Oregon and the failure

by Defendants to repay Plaintiff at the Oregon address caused the alleged breach central to this

case.

 The actual course of dealing demonstrates Defendants have intentionally conducted

business in Oregon and have regular contact with the state. *See Ballard v. Savage*, 65 F.3d 1495,

1499 (9th Cir. 1995) ("By intentionally doing business with California and U.S. residents, the

Bank "purposefully availed itself of the benefit and privilege of conducting activities in

California" and the United States."). On the same day, Defendant Fund II executed the Note with

Derek Sivers, Defendant Wilkins executed a Promissory Note from Fund II to Fund III for the

exact amount Derek Sivers had lent Fund II. Asai Decl Ex. 5. Fund III then invested the full

$700,000 in Morris Medical, LLC, then Morris Medical Oregon, and then into the Oregon based

Trellis entities. Wilkins Dep. 39:3-25; 40:1-14. Through this investment, the holding company,

Morris Medical Oregon owns 25% of Trellis Holdings, OP, LCC which holds the Oregon based

Trellis cannabis businesses. *Id.* 12:19-20.

 Defendant Wilkins through SCI Ventures sent Derek Sivers quarterly updates on the

investment. Each update included a section demarcated with the title "Oregon" and a description

of investments and market conditions in Oregon. Supp. Warren Decl. Ex. 4 at 1-16. These

updates appear to be based, at least in part, on information and financial statements Defendant

Wilkins solicited from a Trellis manager in Oregon. Wilkins Dep. 34:17, 37:19-38:15, 47:3-22.

Defendant Wilkins testified that he uses the name "SCI Ventures" to describe the three funds, so

these updates were presumably sent on behalf of debtor Fund II, as Defendants contend Plaintiff

and Derek Sivers have no formal connection to Fund III. *Id.* 15:23-16:3.

Defendant Wilkins also visited Oregon several times during the relevant period and

conducted business in Oregon on behalf of the Funds. He visited the Trellis farms in Oregon in

2017, 2018, and 2019. *Id*. at 49:7-11; 48:19-49:1. He met with corporate counsel in downtown

Portland in early 2017 to discuss the agreement for Trellis. *Id*. 24:8-25-26:1-8. He asked Oregon-

based Dennis Sivers to assist with the transfer from Fund III to Trellis in either 2019 or 2020. *Id*.

18:2-21. And finally, he authorized the filing of a UCC-1 statement in Oregon on behalf of Fund

III in late 2018. *Id*. 50:24-51:22.

Taken together, these contacts support a finding that Defendants have regular contact

with Oregon. Personal jurisdiction over Defendants is proper because Defendant Wilkins (acting

on behalf of Fund II) reached out beyond Maryland and Delaware by entering a contract that had

express ties to Oregon, including repayment of the loan at an Oregon address. Through a series

of transfers, the funds were invested in Oregon-based cannabis businesses. These investments

left the affiliated holding company with a 25% ownership stake in the holding company of the

Oregon-based cannabis operations. Defendant Wilkins then carefully monitored the Oregon

investments through regular remote and in-person communication and relayed that Oregon-

specific information to Derek Sivers. As a managing member and shareholder of a venture

capital firm, Defendant Wilkins engagement with the investment was more active than what

might be expected from a lay investor and created a significant contacts with Oregon.

Accordingly, for its claim of breach of contract, Plaintiff has made a sufficient showing to establish specific personal jurisdiction under the first prong of the relevant analysis.

### ii.    Arising Out of Forum-Related Activities

Defendant Fund II asserts it has no contacts with Oregon, and Defendant Wilkins asserts that his Oregon contacts "are entirely unrelated to the unpaid loan." Defs.' Second Mot. Dismiss at 13. Plaintiff asserts its breach of contract claim arises out of or relates to Defendant Wilkins' Oregon contacts because those contacts caused Defendant Fund II to not have enough funds to repay its loan obligation. Pl.'s Rsp. at 23-25.

To determine whether a claim arises out of forum-related activities, courts apply a "but for" test. *Ballard*, 65 F.3d at 1500. Here, the Court must decide whether Plaintiff's claims would have arisen but for Defendants' contacts with Oregon. Plaintiff argues that, but for Defendant Wilkins making a string of transfers through Delaware corporations that ended up in Oregon, Defendant Fund II would have sufficient funds to repay the loan. This argument is persuasive because, without the Amended Note and series of transfers, Defendants likely would have been able to repay Plaintiff. Additionally, the claims would not have arisen but for the parties signing the Note and Amended Note, both of which have express ties to Oregon.

The Court finds that Plaintiff has established a prima facie case that Defendants purposefully availed themselves of the benefits and protections of Oregon and that Plaintiff's claim arises out of those contacts.

### iii.    Reasonableness

The burden then shifts to Defendants to show that the exercise of jurisdiction in Oregon is unreasonable. *See Sher v. Johnson*, 911 F.2d 1357, 1364 (9th Cir. 1990) (noting that once a court finds purposeful availment, it must presume that jurisdiction would be reasonable).

Defendants must "present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Burger King*, 471 U.S. at 477. In making this determination, the Court weighs seven factors: (1) the extent of the defendants' purposeful injection into the forum state's affairs, (2) the burden on the defendant of defending in the forum, (3) the extent of the conflict with sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interests in convenient and effective relief; and (7) the existence of an alternative forum. *Sher*, 911 F.2d at 1364. Defendants did not address these factors in their motion. They only asserted that it would be unreasonable to hale a Maryland resident and Delaware corporation into litigation in Oregon. Defs.' Reply to Pl.'s Rsp. to Mot. to Dismiss at 8, ECF 43.

The analysis for the first factor, purposeful interjection, involves the same analysis as the purposeful availment prong. *Roth v. Garcia Marquez*, 942 F.2d 617, 623 (9th Cir. 1991). Because the Court has already found that Defendants purposefully availed themselves of the privilege of conducting activities in Oregon, there is no need to analyze this factor further.

Concerning the second factor, Defendants contend that it is burdensome to require them to litigate this case in a state across the country from their home state. Defendants have obtained local counsel to represent them in this litigation and the record shows they have a continuing relationship with an Oregon-based law firm. As such, Defendants have not shown that it is unreasonable to ask them to litigate in Oregon. *See Ting v. Orbit Commc'n Co.*, 105 F.3d 666, No. 95–55838, 1997 WL 8470 *4 (9th Cir. 1997) (factor favors jurisdiction in light of defendant's contacts with forum state and retention of local counsel).

Defendants make no argument regarding the remaining factors, so the Court addresses them briefly. On the third factor, there is no evidence in the record to indicate that this Court's exercise of jurisdiction in Oregon would conflict with the sovereignty of another state. *See CE Distribution, LLC v. New Sensor Corp.*, 380 F.3d 1107, 1112 (9th Cir. 2004) (noting that this factor favors jurisdiction when there is no evidence to indicate conflicts with another state's sovereignty). On the fourth and fifth factors, there is no evidence that Oregon has a particular interest in this dispute or that it would be more efficient to resolve this action in another state. On the sixth factor, Plaintiff has already selected Oregon as its forum of choice, demonstrating convenience and effectiveness of relief for Plaintiff in Oregon. Finally, regarding the seventh factor, Plaintiff could have sued in any other state if it so desired.

Defendants have not presented a compelling case against the reasonableness of this Court's exercise of jurisdiction. Factors five and seven are neutral because alternative forums exist and Plaintiff has not presented evidence that it would be inefficient to resolve this dispute in another forum. Factors one, two, three, and six support that jurisdiction in Oregon is reasonable. Factor four does not support jurisdiction because no party in this case in an Oregon resident.

Plaintiff has established a prima facie showing that Defendant Wilkins purposefully availed himself of Oregon and that its breach of contract claim arose from his forum-related activities. Defendants have not presented a compelling case showing otherwise. Accordingly, all prongs of the Ninth Circuit's specific jurisdiction test have been satisfied. The Court exercises jurisdiction over Plaintiff's breach of contract claim against Defendants.

### iv.    Pendent Jurisdiction

Under the "pendent personal jurisdiction" doctrine, a court may "assert pendent personal jurisdiction over a defendant with respect to a claim for which there is no independent basis of

personal jurisdiction so long as it arises out of a common nucleus of operative facts with a claim in the same suit over which the court does have personal jurisdiction." *Action Embroidery Corp. v. Atlantic Embroidery, Inc.*, 369 F.3d 1174, 1181 (9th Cir. 2004). Under this doctrine, the exercise of personal jurisdiction lies within the discretion of the district court and depends on "considerations of judicial economy, convenience and fairness to litigants." *Id.* (internal quotations omitted).

Plaintiff's tort claims arise out of the allegation that Defendant Wilkins undercapitalized Defendant Fund II such that it could not repay its obligations. The exercise of personal jurisdiction over all claims serves the interest of judicial economy because the facts related to Plaintiff's breach of contract claim relate to Plaintiff's remaining tort claims. Additionally, as explained above, Defendants have not established that the exercise of jurisdiction over them would be unreasonable. Third, it is not unfair for Defendants to resolve their remaining claims in the same suit because Plaintiff's breach of contract claim shares a common nucleus of operative facts with its remaining claims. Therefore, the Court exercises its discretion to assert pendent personal jurisdiction over Defendants for all of Plaintiff's remaining claims.

## II.    Motion to Dismiss for Failure to State a Claim

### A.    Standards

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the claims. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). When evaluating the sufficiency of a complaint's factual allegations, the court must accept all material facts alleged in the complaint as true and construe them in the light most favorable to the non-moving party. *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012). A motion to dismiss under Rule 12(b)(6) will be granted if a plaintiff alleges the "grounds" of his "entitlement to relief"

with nothing "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)[.]" *Id.* (citations and footnote omitted).

To survive a motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). A plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In other words, a complaint must state a plausible claim for relief and contain "well-pleaded facts" that "permit the court to infer more than the mere possibility of misconduct[.]" *Id.* at 679.

**B.    Analysis**

Plaintiff brings claims for breach of contract, piercing the corporate veil, fraudulent transfer, unjust enrichment, and violations of Oregon securities law pursuant to ORS 59.115 and ORS 59.135. Defendants move to dismiss all claims except the breach of contract claim against Defendant Fund II.

The Court grants the motion to dismiss Plaintiff's claim for piercing the corporate veil, as this is a theory of liability, not an independent cause of action. The Complaint alleges sufficient facts to support claims for fraudulent transfer and violations of Oregon securities laws and therefore, the Court denies Defendant's motion to dismiss these claims. Finally, the Court dismisses Plaintiff's claim for unjust enrichment because express contracts govern the loan.

//

### i.    Piercing the Corporate Veil

Defendant Wilkins moves to dismiss Plaintiff's claim for piercing the corporate veil arguing this is a remedy not a separate cause of action. Plaintiff contends the Court may assert liability against Defendant Wilkins under a veil piercing theory at this stage in the litigation.

The Court agrees with Defendant that Plaintiff's claim for piercing the corporate veil is not an independent cause of action but is a theory of liability for the underlying breach of contract claim and other claims in this action. *See Swaidan Trading Co., LLC v. M/V DONOUSA*, No. 3:18-CV-00398-HZ, 2018 WL 3414317, at *4 (D. Or. July 13, 2018) (finding the same). As such, the Court dismisses the claim for piercing the corporate veil. Plaintiff may however continue to make alter ego allegations as a basis for liability related to the other underlying substantive claims as this action proceeds. *See Green Atlas Shipping S.A. v. United States*, 306 F. Supp. 2d 974, 977 (D. Or. 2003) (dismissing a claim for piercing the corporate veil but allowing the plaintiff to proceed with its theory of liability).

### ii.    Fraudulent Transfer

Defendants move to dismiss Plaintiff's claim for fraudulent transfer. They argue Plaintiff has not alleged an intent to defraud or a lack of reasonably equivalent value. Plaintiff responds that it has alleged both.

Under Oregon law, a transfer is fraudulent if it is made by a debtor "with actual intent to hinder, delay, or defraud any creditor of the debtor." ORS 95.230(1)(a). Analyzing fraudulent intent under this section requires "a case-by-case factual determination" and is a subjective analysis. *Morris v. Nance*, 132 Or. App. 216, 221–22, 888 P.2d 571, 575 (1994). ORS 95.230(2) provides a list of non-exhaustive factors or "badges of fraud" that "allow[] the inference of actual

intent to be drawn from the presence of listed factors or other suspicious factual circumstances surrounding the transfer." *Id.* These include whether:

> (a) The transfer or obligation was to an insider;
> (b) The debtor had retained possession or control of the property transferred after the transfer;
> (c) The transfer or obligation was disclosed or concealed;
> (d) Before the transfer was made or obligation was incurred, the debtor was sued or threatened with suit;
> (e) The transfer was of substantially all the debtor's assets;
> (f) The debtor had absconded;
> (g) The debtor had removed or concealed assets;
> (h) The value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;
>> (i) The debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;
>> (j) The transfer had occurred shortly before or shortly after a substantial debt was incurred; and
> (k) The debtor had transferred the essential assets of the business to a lienor who had transferred the assets to an insider of the debtor.

*See* ORS § 95.230(2).

Plaintiff alleges a plausible claim for fraudulent transfer under the statute. Although Plaintiff does not allege facts to support actual intent, it alleges facts that support the "inference of actual intent to be drawn" from the existence of "badges of fraud" identified in the statute. *Morris*, 132 Or. App. at 221, 888 P.2d at 575. Specifically, Plaintiff alleges Defendant Wilkins concealed the transfer, the transfer left Defendant Fund II insolvent and undercapitalized, the transfer occurred on the same day Defendant Fund II received the funds, and Defendant Fund II did not receive consideration reasonably equivalent to the value of the asset transferred. Am. Compl. ¶¶ 12, 16, 33–35, 40–41.

Defendants contend that Plaintiff has failed to state a cause of action because Defendant Fund II received reasonably equivalent value in exchange for the transfer of the $700,000 to

Fund III. They rely on the Promissory Note between Defendant Fund II and Fund III executed by Defendant Wilkins.

The statute defines "value" in § 95.220: "Value is given for a transfer or an obligation if in exchange for the transfer or obligation property is transferred or an antecedent debt is secured or satisfied, but value does not include an unperformed promise made otherwise than in the ordinary course of the promisor's business to furnish support to the debtor or another person." ORS 95.220(1). Defendants rely on the negative to argue that under this definition "value" includes unperformed promises made in the ordinary course of business.

Defendants are correct that the language of the statute may permit a finding that an "unperformed promise" constitutes value so long as it was made in the ordinary course of the promisor's business. *See e.g. Bowman v. El Paso CGP Co.*, 431 S.W.3d 781, 786 (Tex. App. 2014) (citing cases and finding the same); *but see* Howard J. Steinberg, Bankruptcy Litigation § 17:37 (Sept. 2021 Update) (noting a split of authority on "whether an unperformed promise to be performed in the future can be reasonably equivalent value."). However, even if the Court found that the promissory note constituted "value" under the statute, this does not doom Plaintiff's claim. Under ORS 95.270(1), "[a] transfer or obligation is not voidable under ORS 95.230(1)(a) as against a person who took in good faith and for a reasonably equivalent value [.]" *See* ORS 95.270(1). Plaintiff alleges facts that make the transaction suspicious, such that it may not have been made in good faith. Accordingly, Plaintiff states a plausible claim for fraudulent transfer under ORS 95.230(1)(a).

Defendants also argue that Plaintiff cannot show that the transfer left Defendant Fund II insolvent because it still owned stock in Maya Cinemas. On the facts before it, the Court cannot determine the fair value of this stock relative to Defendant Fund II's obligations. *See* ORS

95.210(1) ("A debtor is insolvent if, at a fair valuation, the sum of the debtor's debts is greater than all of the debtor's assets."). Additionally, Plaintiff alleges that Defendant Fund II failed to satisfy its obligation due under the Amended Note. Am. Compl. ¶ 24. These facts are sufficient to allege insolvency under the statute. *See* ORS 95.210(2) ("A debtor who is generally not paying debts of the debtor as they become due is presumed to be insolvent.").

### iii.    Unjust Enrichment

Defendants move to dismiss Plaintiff's claim for unjust enrichment. Plaintiff essentially concedes that the claim cannot proceed against Defendant Fund II but argues it may proceed against Defendant Wilkins as an individual.

Unjust enrichment is a quasi-contractual claim. *Summer Oaks Ltd. P'ship v. McGinley*, 183 Or. App. 645, 654, 55 P.3d 1100, 1104 (2002). The elements are: "a benefit conferred, awareness by the recipient that a benefit has been received and, under the circumstances, it would be unjust to allow retention of the benefit without requiring the recipient to pay for it." *Id.* (internal quotations and citation omitted).

The Court dismisses Plaintiff's claim for unjust enrichment against Defendant Fund II and Defendant Wilkins because express contracts govern the loan—the Promissory Note and the Amended Note. *See United States ex rel. Doughty v. Oregon Health & Scis. Univ.*, No. 3:13-CV-01306-BR, 2017 WL 1364208, at *6 (D. Or. Apr. 11, 2017) ("A plaintiff may not recover on a claim that is quasicontractual in nature in the face of an express contract that governs the matter under dispute."). Additionally, as Defendant points out, Plaintiff has not alleged facts showing Defendant Wilkins received any *personal* benefit from the transaction. *See Summer Oaks Ltd. P'ship*, 183 Or. App. at 654, 55 P.3d at 1104.

### iv.    Violations of Oregon Securities Law

Plaintiff brings claims for violations of Oregon securities laws pursuant to ORS 59.115 and ORS 59.135. Defendants contend that these claims fail as a matter of law because these claims are not governed by Oregon law and argue that even if Oregon law applies, the Promissory Note and Amended Note are not securities.

### 1.    Choice of Law

As an initial matter, the Court addresses Defendants' choice of law argument. A federal court sitting in diversity applies the forum state's choice of law rules to determine what law applies. *Alaska Rent-A-Car, Inc. v. Avis Budget Grp.*, Inc., 738 F.3d 960, 975 (9th Cir. 2013). Oregon has codified its choice-of-law rules. *See* ORS §§ 15.300-15.460.

Oregon law governs the Promissory Note and Amended Note because both agreements contain Oregon choice of law provisions. *See* ORS § 15.350(1) ("the contractual rights and duties of the parties are governed by the law or laws that the parties have chosen."). Plaintiff argues that these provisions control what law applies to its securities claims. In Oregon, however, choice of law questions for non-contractual claims are governed by statute. *See* ORS §§ 15.430, 15.440(1).

ORS § 15.440(3) governs this choice of law issue because the securities law claims are noncontractual and the parties are domiciled in different states. Before getting to the merits question of where the injurious conduct and resulting injury occurred, ORS§ 15.440(3) first asks whether "the laws of those states on the disputed issues would produce a different outcome." Defendants do not address this threshold question in their choice of law argument. They do not specify which state's law should apply or explain how the application of a different state's securities laws would produce a different outcome. This is a significant oversight because on its face, the likely alternative, Maryland securities law, appears to closely resemble Oregon

securities law. *See, e.g.*, Md. Code Ann., Corps. & Ass'ns § 11-301 (West). Without argument

from the parties, the Court cannot confidently determine if Defendants' liability and the

availability of damages would differ under another state's laws. Defendants may renew this

argument at summary judgment, but without further development from the parties, the Court

declines to consider Defendant's choice of law argument and dismiss the securities claims on this

basis.

## 2.    Application of Oregon Securities Laws

Next, Defendants argue that Plaintiff cannot state a cause of action under Oregon

Securities law because it does not plausibly allege the Promissory Note and Amended Note were

securities.

Oregon courts rely on the *Reves* four-factor test to determine whether a note constitutes a

security. *See Lahn v. Vaisbort*, 276 Or. App. 468, 483, 369 P.3d 85, 95 (2016). There is a

presumption that a note is a security. *Reves*, 494 U.S. at 61. A party may rebut this presumption

by showing that the note falls into one of several judicially created exceptions or bears a strong

family resemblance to a judicial exceptions. *Id.* at 64. To make this determination, courts

consider: "(1) the motivations that would prompt a reasonable buyer and seller to enter into the

transaction in question; (2) the plan of distribution of the instrument; (3) the reasonable

expectations of the investing public; and (4) whether the existence of an alternate regulatory

scheme significantly reduces the risk of the instrument." *McNabb v. SEC*, 298 F.3d 1125, 1131

(9th Cir. 2002).  "[C]ourts, including the Oregon appellate courts, construe the definition of

'security' liberally, to protect the investing public." *Lahn*, 276 Or. App. at 484, 369 P.3d at 95

(citation omitted).

The first factor, motivation for entering the transaction, supports a finding that the notes are securities. *Reves*, 494 U.S. at 68. Plaintiff alleges Defendant Wilkins and Derek Sivers discussed Defendants "borrowing certain funds on a short-term basis to use in the Fund's business operations." Am. Compl. ¶ 8. In *McNabb* the Ninth Circuit stated that "a note is likely to be a security 'if the seller's purpose is to raise money for the general use of a business enterprise or to finance substantial investments and the buyer is interested primarily in the profit the note is expected to generate.'" 298 F.3d at 1131 (quoting *Reves*, 494 U.S. at 66).

Here, Plaintiff alleges Defendant Wilkins represented that his purpose was to raise funds to support "business operations" and that he ultimately used the funds to "invest in high risk cannabis enterprises." Am. Compl. ¶¶ 8, 13; *compare Raze v. Walbridge*, No. 3:20-CV-00957-AC, 2021 WL 2274194, at *4 (D. Or. Apr. 14, 2021), *report and recommendation adopted in part, rejected in part*, No. 3:20-CV-957-AC, 2021 WL 2036660 (D. Or. May 21, 2021) (finding the note was not a security when it was "executed for an exclusive commercial purpose, the Defendants' purchase of the Mobile Home Park."). Plaintiff did not lend money to an operating commercial business, but to a venture capital fund that then used the funds to invest in other businesses. Wilkins Dep. 9:6-8; 9:18-10:21; Am Compl. ¶ 66; Asai Decl. Ex. 3.

Defendants argue that the notes are not securities because Plaintiff was to receive interest, not profits from Defendant Fund II. Defendants' argument is unavailing. Courts have found that receipt of interest qualifies as profit under the *Reeves* motivation factor. *See Lahn*, 276 Or. App. at 487, 369 P.3d at 97 ("It is of no consequence that the profit took the form of interest."); *Battig v. Simon*, 237 F. Supp. 2d 1139, 1144 (D. Or. 2001) (It matters not . . . that the profit was in the form of interest.").

The second factor, the plan of distribution of the instrument, is neutral. *Reves*, 494 U.S. at 66. "If notes are sold to a broad segment of the public, then 'common trading' is established." *McNabb*, 298 F.3d at 1132 (citing *Reeves*, 494 U.S. at 68). Plaintiff has not established "common trading" because it alleges that there was only one note and amended note executed by a private individual and later assigned to Plaintiff. However, "the number of purchasing individuals is not dispositive and must be weighed against the purchasing individual's need for the protection of the securities laws." *Raze*, No. 3:20-CV-00957-AC, 2021 WL 2274194, at *6 (citing *McNabb*, 298 F.3d at 1132). Derek Sivers is a private individual, not a financial institution. His level of sophistication at the time of the transaction is not established in the Amended Complaint, but as an individual "the protection provided by the Securities Acts would benefit" him. *Id.*

Under the third factor, the Court examines whether the notes would be reasonably perceived by the investing public as a security. *Reves*, 494 U.S. at 66. This factor favors a finding that the notes are securities. On this factor, the Court considers "whether a reasonable member of the investing public would consider these notes as investments, 'even where an economic analysis of the circumstances of the particular transaction might suggest that the instruments are not "securities" as used in that transaction.'" *McNabb*, 298 F.3d at 1132 (quoting *Reves*, 494 U.S. at 66). "This factor is closely related to the first factor—motivation for the transaction—and thus the considerations discussed vis-a-vis that factor also come into play here." *S.E.C. v. Wallenbrock*, 313 F.3d 532, 539 (9th Cir. 2002).

At first blush, the initial Promissory Note has markers of a one-off, short term loan, as Defendants contend. However, the other facts Plaintiff alleges cut against this finding. As discussed above, the note had a high fixed interest rate of 12.75%, which is considered profit. *Battig*, 237 F. Supp. 2d at 1144. It was also made to a venture capital fund versus an operating

business. At the time the Promissory Note was due, Plaintiff alleges Defendant Wilkins requested an extension of time to repay the note and the parties rolled the obligation into the Amended Note. *See Lahn*, 276 Or. App. at 488, 369 P.3d at 98 (emphasizing the significance of loan rollovers); *Wallenbrock*, 313 F.3d at 539 (9th Cir. 2002) (same). This was not an automatic rollover, but the renewal, in addition to Plaintiff's allegations that the funds were ultimately used as investments, support categorizing the notes as securities.

The fourth factor requires the Court to consider whether there were adequate risk-reducing factors such as an alternate regulatory scheme that would "significantly reduce[ ] the risk of the instrument" to the lender, "thereby rendering application of the Securities Acts unnecessary." *Reves*, 494 U.S. at 67. Under the Note and Amended Note, Defendant Fund II offered as collateral "shares of Series B Preferred of Maya Cinemas North America Inc.," and "shares of Series B-1 Preferred of Maya Cinemas North America Inc." Am. Compl. ¶ 17. As other courts have acknowledged, collateralization obviously helps reduce the risk on a loan. *See Wallenbrock*, 313 F.3d at 539; *Lahn*, 276 Or. App. at 488, 369 P.3d at 98. However, as Plaintiff points out, the Notes here are secured by private stock that is not readily marketable. Accordingly, this factor is neutral.

Considering the *Reves* factors together, the Court finds Plaintiff has alleged sufficient facts to support a finding that the Note and Amended Notes are securities under Oregon law. The Court denies Defendants' motion to dismiss Plaintiff's securities claims.

//

//

//

//

## CONCLUSION

Defendants' Motion to Dismiss [34] is GRANTED in part and DENIED in part.

IT IS SO ORDERED.

DATED:_____January 25, 2022_____.


MARCO A. HERNANDEZ
United States District Judge

# APPENDIX A



ORGANIZATIONAL CHART