IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

SOUND FOUNDATION, a foreign
corporation,

                        Plaintiff,

      v.

SCI Fund II, LLC, a Delaware limited
liability company, and HERBERT P.
WILKINS, JR., a Maryland resident,

                      Defendants.

No. 3:20-cv-01190-HZ

OPINION & ORDER

Britta Warren
Elli Tillotson
Black Helterline LLP
805 SW Broadway, Suite 1900
Portland, OR 97205

      Attorneys for Plaintiff

Shannon Armstrong
Kristin Asai
Abigail Gore

Holland & Knight LLP
601 SW Second Ave., Suite 180
Portland, OR 97204

    Attorneys for Defendants

HERNÁNDEZ, District Judge:

    Plaintiff Sound Foundation has four claims remaining against SCI Fund II, LLC

("Defendant Fund II") and Herbert P. Wilkins, Jr. ("Defendant Wilkins"), individually and

collectively. Against Defendant Fund II, Plaintiff brings a breach of contract claim. Against

Defendant Wilkins, Plaintiff alleges securities violations under Oregon Revised Statute

("O.R.S.") §§ 59.115(1)(b) & 59.115(3), and securities fraud under O.R.S. 59.135. Against both

Defendants, Plaintiff brings claims for fraudulent transfer under the Uniform Fraudulent Transfer

Act ("UFTA"), O.R.S. 95.200 *et seq.*

    Plaintiff moves unopposed for summary judgment on its breach of contract claim. Pl.

Mot. Summ. J., ECF 58. Defendants move for summary judgment on Plaintiff's other remaining

claims. Def. Mot. Summ. J., ECF 61. For the following reasons, the Court grants both motions.

## BACKGROUND

    This case centers on an unpaid promissory note and amended note ("the Notes") between

Plaintiff Sound Foundation and Defendant Fund II. Plaintiff is a foreign corporation registered in

the Cook Islands founded by Derek Sivers. Sivers Decl. ¶ 6, ECF 59. Derek Sivers, the original

buyer of the initial promissory note, assigned his interest in the Notes to Plaintiff. *Id.* ¶ 5, Ex. 1.

During the period relevant to this motion, Derek Sivers lived outside the United States. Asai

Decl. in Support of Def. Mot. Partial Summ. J. ("Asai Decl. Mot. Summ. J.") Ex. 1, Sivers Dep.

8:5-18, ECF 63. Dennis Sivers, the father of Derek Sivers, lived in Oregon. Asai Decl. Mot.

Summ. J. Ex. 7 at 10.

Defendant Herbert P. Wilkins is a venture capitalist who works as a managing director for SCI Management, Inc. Warren Supp. Decl. in Support of Pl. Resp. to Def. Second Mot. to Dismiss ("Warren Decl. Second Mot. to Dismiss") Ex. 1, Wilkins Dep. I 8:1-9:3, ECF 40. Wilkins resides in Maryland. *Id.* at 7:16-20. SCI Management is based in Delaware. Wilkins Dep. I 8:14-9:3. SCI Management manages three separate investment portfolios: SCI ("Fund I"), SCI Fund II, LLC (Defendant Fund II), and SCI Fund III, LLC ("Fund III") (collectively "SCI Funds"). *Id.* at 11:10-12:1; 15:4-15.

Defendant SCI Fund II is a venture capital fund registered in Delaware. *Id.* 9:6-8; Asai Decl. in Support of Def. Second Mot. to Dismiss ("Asai Decl. Second Mot. to Dismiss") Ex. 3, ECF 35. It has an investment portfolio comprised of multiple companies. Wilkins Dep. I 9:18-10:21. One of those is Maya Cinemas, a California corporation. *Id.* 10:14-20. Maya Cinemas operates six movie theaters in the United States. Asai Decl. in Support of Def. Reply in Support of Def. Mot. Partial Summ. J. ("Asai Decl. Reply Summ. J.") Ex. 3, ECF 67. Defendant Wilkins and Dennis Sivers are board members of Maya Cinemas. Wilkins Dep. I 16:16-20. Fund II also holds investments in Tap It, Human Network Labs, and Diamond Ventures, LLC. Warren Decl. in Support of Pl. Resp. to Def. Mot. Partial Summ. J. ("Warren Decl. Resp. Summ. J.") Ex. 8, Wilkins Dep. II 16:6-12, ECF 65.

In or about January 2017, Derek Sivers agreed to provide Defendant Fund II with a short-term loan of $700,000. Sivers Decl. ¶ 2; Am. Compl. Ex. 1 (2017 Promissory Note). Dennis Sivers called Derek Sivers to suggest that Derek Sivers make a short-term loan to help Wilkins out. Sivers Dep. 28:24-29:3. Dennis Sivers suggested that his son charge a high interest rate and that the loan would be repaid within a few months. *Id.* at 29:4-5. Dennis Sivers stated that Wilkins was a friend and associate and "was good for it." *Id.* at 29:1, 29:6-7. Dennis Sivers told

Derek Sivers that the purpose of the loan was to help Wilkins start his marijuana business so that he could obtain a long-term loan. *Id.* at 29:7-9. Derek Sivers agreed to the loan if it was short-term and for a high interest rate. *Id.* at 29:10-11. Peggy Faber, an employee at Dennis Sivers's office in Oregon, drafted the note. *Id.* at 29:11-13.

During negotiations, Derek Sivers was included in emails, but did not actively participate in the negotiations, which his father conducted on his behalf. *Id.* at 29:14-20. Dennis Sivers advised his son to charge a very high interest rate and high monthly fees to reinforce that the loan would be short-term. *Id.* at 30:3-7. The Initial Note was initially contemplated to be between Derek Sivers and Morris Medical LLC, a Maryland cannabis business. Wilkins Dep. I 30:25-31:4.

However, Dennis Sivers emailed Defendant Wilkins to request that the loan be secured by Maya Cinemas stock, and Wilkins agreed. Asai Decl. Mot. Summ J. Ex. 3 at 1. Wilkins then advised Dennis and Derek Sivers by email: "The note is structured such that the debtor needs to control the collateral. Therefore I am changing the Borrower to SCI Fund II, LLC as it is the entity that owns the Series B & B-1 Maya stock." Asai Decl. Mot. Summ. J. Ex. 4 at 1. Derek Sivers was unaware of his father's and Wilkins's roles with Maya Cinemas. Sivers Dep. 30:14-18. He did not request collateral for the loan. *Id.* at 37:14-16. He was not involved in negotiating the security for the loan. *Id.* at 34:8-12. He did not know how the loan was secured before making the loan. *Id.* at 34:20-22. He testified that he had done no investigation into the value of Maya Cinemas stock because the loan was meant to be a short-term loan and he "ha[d] no interest in Maya stock" and believed that Sound Foundation did not want to own it. *Id.* at 37:21-38:5.

The promissory note listed Derek Sivers as payee and Defendant Fund II as debtor. Am. Compl. Ex. 1 at 1. The Note provides a Portland, Oregon, address for Derek Sivers and a Baltimore, Maryland, address for Defendant Fund II. *Id.* at 4. Defendant Wilkins signed the Note as a managing member of Defendant Fund II. *Id.* Plaintiff explained that the Note lists an Oregon address for Derek Sivers based on Dennis Sivers's residence in Oregon and because Derek Sivers "maintained an Oregon mailing address for taxes and bank accounts[.]" Asai Decl. Mot. Summ. J. Ex. 7 at 10. The original Note matured on January 10, 2018. Am. Compl. Ex. 1 at 1. The loan was secured by shares of Maya Cinemas stock. *Id.* at 2.

Derek Sivers wired the funds to Fund II on January 13, 2017. Warren Decl. Resp. Summ. J. Ex. 1 at 3. The majority of the funds, $650,000, were transferred to Fund III on January 24, 2017. Warren Decl. Resp. Summ. J. Ex. 1 at 3, Ex. 2 at 3. The same day, they were transferred to Doctor's Orders Maryland. Warren Decl. Resp. Summ. J. Ex. 2 at 3. This entity, a cannabis enterprise, is now known as Culta. Wilkins Dep. II 32:19-25. In exchange for the funds, Fund III gave Fund II an interest-bearing promissory note for $700,000. Warren Decl. in Support of Pl. Resp. to Def. Mot. to Dismiss ("Warren Decl. Mot. to Dismiss") Ex. 9 at 4, ECF 20. The Fund III promissory note was dated the same day as the initial Note. Am. Compl. Ex. 1 at 1 (promissory note from Fund II to Derek Sivers for $700,000 dated January 10, 2017); Warren Decl. Mot. to Dismiss Ex. 9 at 4 (promissory note from Fund III to Fund II for $700,000 dated January 10, 2017).

Fund II transferred $25,000 of the remaining $50,000 of the Sivers Funds out of the account on February 14, 2017. Warren Decl. Resp. Summ. J. Ex. 1 at 7. The funds were transferred to an account for SCIM, Inc. (SCI Management, Inc.). *Id.* Ex. 4 at 7. Prior to this, on February 8, 2017, SCIM, Inc., transferred $25,000 to Martch Innovations. *Id.* The final $25,000

of the Sivers Funds was withdrawn from the Fund II account on March 3, 2017. *Id.* Ex. 1 at 11. These funds were also transferred to the account for SCIM, Inc. *Id.* Ex. 4 at 11. The same day, SCIM transferred $25,000 to Martch Innovations. *Id.* Martch Innovations was the predecessor of Trellis Holdings OP, LLC, a cannabis enterprise. Wilkins Dep. II 68:14-17. Defendant Wilkins could not identify any promissory note reflecting a transfer of the Sivers funds to Martch Innovations. *Id.* at 68:6-69:18.

A bank statement for Fund II for January 2017 shows a beginning balance of $147.00 Warren Decl. Summ. J. Ex. 1 at 1. The February 2017 statement shows an ending balance of $25,117.00 *Id.* at 5. The March 2017 statement shows an ending balance of $117.00. *Id.* at 9.

Fund III has investments in three companies: Morris Medical, Salthouse Energy Advisors, and Company Listing Central. Wilkins Dep. II 18:19-19:1. Morris Medical is a holding company for cannabis investments. *Id.* at 32:8-9. Its holdings are Morris Medical Oregon and Morris Medical Maryland. *Id.* at 32:11-13. Morris Medical Oregon owns Trellis Holdings OP, LLC. *Id.* at 32:15-18. Morris Medical Maryland owns Culta, LLC; Heirloom, LLC, and CULTA Ventures. *Id.* at 32:19-22. The prior name was Doctor's Orders Maryland. *Id.* at 32:23-25.

Derek Sivers testified that he thought he would be loaning funds to Wilkins's "marijuana growing businesses." Sivers Dep. 34:13-16. He stated that he did not learn the name of the business prior to making the loan. *Id.* at 34:17-19, 40:19-25. He testified that the only information his father gave him before he made the loan was that Wilkins was "a good guy that came from a wealthy family" who was "good for" the loan. *Id.* at 35:11-17. Derek Sivers testified that he trusted his father's judgment regarding Wilkins and stated, "Honestly the fact that my dad was vouching telling me that I could trust this guy and it would be only a few

months it seemed cut and dry that I didn't need to do much diligence since my dad knows him

and trusts him." *Id.* at 41:7-13. He testified that no one told him that Fund II was the name of the

marijuana growing business but that he assumed it was when he saw it on the loan document. *Id.*

at 41:14-17.

In June 2017, Wilkins emailed Derek Sivers to discuss extending the loan. Sivers Dep.

39:7-22. In February 2018, Derek Sivers agreed to amend the Note to extend it through

December 2018. Sivers Dep. 38:20-22; Warren Decl. Resp. Summ. J. Ex. 6; Am. Compl. Ex. 2.

He was motivated by the high interest rate. Sivers Dep. 38:23-39:3. He did not recall speaking

with Wilkins prior to extending the note. *Id.* at 39:23-40:10. He did communicate with him by

email. *Id.* at 52:2-5; Warren Decl. Resp. Summ. J. Ex. 6. Dennis Sivers was not included on the

emails between Derek Sivers and Defendant Wilkins in February 2018. Warren Decl. Resp.

Summ. J. Ex. 6.

Defendants failed to repay the loan by the amended deadline. Warren Decl. in Support of

Pl. Mot. Partial Summ. J. ("Warren Decl. Mot. Summ. J.") Ex. 1 at 1, ECF 60. In January 2020,

Derek Sivers assigned his rights, titles, and interests in the Notes to Plaintiff. Sivers Decl. ¶ 5 Ex.

1.

Plaintiff filed suit on July 22, 2020. Compl. After jurisdictional discovery, the Court

denied Defendants' motion to dismiss for lack of personal jurisdiction, and granted Defendants'

motion to dismiss for failure to state a claim on two of Plaintiff's claims and denied that motion

with respect to all other claims. Op. & Ord., ECF 44. Both parties now move for partial summary

judgment. Defendants do not oppose Plaintiff's motion, while Plaintiff opposes Defendants'

motion.

## STANDARDS

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial responsibility of informing the court of the basis of its motion, and identifying those portions of "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting former Fed. R. Civ. P. 56(c)).

Once the moving party meets its initial burden of demonstrating the absence of a genuine issue of material fact, the burden then shifts to the nonmoving party to present "specific facts" showing a "genuine issue for trial." Fed. Trade Comm'n v. Stefanchik, 559 F.3d 924, 927-28 (9th Cir. 2009) (internal quotation marks omitted). The nonmoving party must go beyond the pleadings and designate facts showing an issue for trial. Bias v. Moynihan, 508 F.3d 1212, 1218 (9th Cir. 2007) (citing Celotex, 477 U.S. at 324). "A non-movant's bald assertions or a mere scintilla of evidence in [its] favor are both insufficient to withstand summary judgment." Stefanchik, 559 F.3d at 929.

The substantive law governing a claim determines whether a fact is material. Suever v. Connell, 579 F.3d 1047, 1056 (9th Cir. 2009). The court draws inferences from the facts in the light most favorable to the nonmoving party. Earl v. Nielsen Media Rsch., Inc., 658 F.3d 1108, 1112 (9th Cir. 2011). If the factual context makes the nonmoving party's claim as to the existence of a material issue of fact implausible, that party must come forward with more persuasive evidence to support its claim than would otherwise be necessary. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

## DISCUSSION

Both parties move for partial summary judgment. Plaintiff moves unopposed for summary judgment on its breach of contract claim. Pl. Mot. Summ. J. Defendants move for summary judgment on Plaintiff's fraudulent transfer and securities claims. Def. Mot. Summ. J. The Court grants both motions.

## I.    Plaintiff's Motion for Partial Summary Judgment

Plaintiff moves for summary judgment on its breach of contract claim against Defendant Fund II. Pl. Mot. Summ. J. Defendants do not oppose Plaintiff's motion. *Id.*

An unopposed motion for summary judgment does not automatically entitle the movant to judgment as a matter of law. The Ninth Circuit has affirmed that summary judgment should not be granted "where the movant's papers are insufficient to support that motion or on their face reveal a genuine issue of material fact." *Henry v. Gill Indus., Inc.*, 983 F.2d 943, 950 (9th Cir. 1993) (holding that district court erred in entering partial summary judgment against a defendant where failure to comply with a local rule resulted in the motion being unopposed, and then upholding grant of summary judgment because evidence in the record showed the plaintiff was entitled to judgment as a matter of law). Thus, even if the motion is unopposed, the district court must evaluate the evidence presented to determine whether the movant is entitled to judgment as a matter of law. *E.g.*, *Clarendon Am. Ins. Co. v. Jai Thai Enterprises, LLC*, 625 F. Supp. 2d 1099, 1103, 1108 (W.D. Wash. 2009) (denying the plaintiff's unopposed motion for summary judgment due to insufficient evidence showing that the plaintiff was entitled to judgment as a matter of law).

To be entitled to summary judgment on its breach of contract claim, Plaintiff must establish "the existence of a contract, its relevant terms, plaintiff's full performance and lack of

breach[,] and defendant's breach resulting in damage to plaintiff." *Moyer v. Columbia State Bank*, 316 Or. App. 393, 402, 505 P.3d 26 (2021), *review denied*, 369 Or. 705, 509 P.3d 116 (2022).

Plaintiff has shown that it is entitled to judgment as a matter of law on its breach of contract claim. Plaintiff established the existence of a contract with Defendants (the Notes), the terms of that contract (as stated in the Notes), and that Defendants breached the contract (by failing to timely repay the loan). Answer ¶¶ 10, 15, ECF 46; Am. Compl. Exs. 1-2; Warren Decl. Mot. Summ. J. Exs. 1, 2 at 6-10. Plaintiff likewise established that it fully performed under the contract, as Derek Sivers, Plaintiff's predecessor in interest, was not required to do more than provide the funds. Am. Compl. Exs. 1-2. Therefore, Plaintiff is entitled to payment of principal and interest under the Amended Note.

Plaintiff also moves for payment of late fees pursuant to a clause in the Amended Note setting the amount of such fees as liquidated damages. Pl. Mot. Summ. J. 7; Am. Compl. Ex. 2 at 1 ¶ 3(a). Oregon law provides that liquidated damages clauses are lawful if the amount of damages set is reasonable. O.R.S. 72.7180(1). The party seeking to avoid the clause bears the burden of proving that the amount is unreasonable. *Illingworth v. Bushong*, 61 Or. App. 152, 155, 656 P.2d 370 (1982), *aff'd*, 297 Or. 675, 688 P.2d 379 (1984). Defendant Fund II does not challenge the reasonableness of the late fee clause in the Amended Note. Therefore, Plaintiff is entitled to payment of late fees.

In sum, Plaintiff has shown that it is entitled to judgment as a matter of law on its breach of contract claim. The Court declines to address the amount of damages at this time. The Court now turns to Defendants' motion.

## II.     Defendants' Motion for Partial Summary Judgment

Defendants move for summary judgment on Plaintiff's securities claims and fraudulent transfer claim. Def. Mot. Summ. J. Plaintiff opposes the motion and further argues that it should be granted partial summary judgment on its fraudulent transfer claim. Pl. Resp. 2, ECF 64. The Court concludes that Defendants have shown an absence of a genuine issue of material fact on these claims and are entitled to judgment as a matter of law.

### A.     Fraudulent Transfer Claim

Plaintiff brings its fraudulent transfer claim under two provisions of UFTA, O.R.S. 95.230(1) and O.R.S. 95.240. Am. Compl. ¶ 43. O.R.S. 95.230(1) provides:

> A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:
> **(a)** With actual intent to hinder, delay, or defraud any creditor of the debtor; or
> **(b)** Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:
> > **(A)** Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or
> > **(B)** Intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they become due.

O.R.S. 95.240 provides:

> (1) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor becomes insolvent as a result of the transfer or obligation.

> (2) A transfer made by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made if the transfer was made to an insider for other than a present, reasonably equivalent value, the debtor was insolvent at that time and the insider had reasonable cause to believe that the debtor was insolvent.

Fraudulent intent is determined as of the date of the transfer. *Mitchell v. Burt & Gordon,*

*P.C.*, Case No.: 93–438–FR, 1993 WL 469260, at *6 (D. Or. Nov. 10, 1993) (citing *Nelson v.*

*Hansen*, 278 Or. 571, 577-78, 565 P.2d 727 (1977)).

          i.      Claim under O.R.S. 95.230(1)(a)

This provision requires the plaintiff to prove that the defendant acted with actual intent to

defraud. Analyzing fraudulent intent under O.R.S. 95.230(1)(a) requires "a case-by-case factual

determination" and is a subjective analysis. *Morris v. Nance*, 132 Or. App. 216, 221-22, 888

P.2d 571 (1994). Fraudulent intent may be proved by direct or circumstantial evidence. *Id.* at

221.

The statute provides a list of factors the Court may consider when determining actual

intent:

> **(a)** The transfer or obligation was to an insider;
> **(b)** The debtor had retained possession or control of the property transferred after the transfer;
> **(c)** The transfer or obligation was disclosed or concealed;
> **(d)** Before the transfer was made or obligation was incurred, the debtor was sued or threatened with suit;
> **(e)** The transfer was of substantially all the debtor's assets;
> **(f)** The debtor had absconded;
> **(g)** The debtor had removed or concealed assets;
> **(h)** The value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;
> **(i)** The debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;
> **(j)** The transfer had occurred shortly before or shortly after a substantial debt was incurred; and
> **(k)** The debtor had transferred the essential assets of the business to a lienor who had transferred the assets to an insider of the debtor.

O.R.S. 95.230(2). These factors, commonly known as the badges of fraud, may favor either

party. *Morris*, 132 Or. App. at 221.

12 – OPINION & ORDER

"The absence of actual fraudulent intent can only be shown by evidence that supports an alternative motive on the part of a defendant." *Id.* A defendant can establish a legitimate purpose for the transfer and so overcome an inference of fraud. *Id.* at 223-25 (holding that there was no actual intent to defraud where the defendant established that the transfer was made to fulfill a prior agreement of the parties although the plaintiff showed that three badges of fraud were present).

a.    Direct Evidence

Defendants argue that Plaintiff provided no evidence that Defendants had an actual intent to hinder, delay, or defraud Derek Sivers. Def. Mot. Summ. J. 7-8. Defendants first assert that there is no direct evidence of fraud because the transfer of funds from Fund II to Fund III accomplished the parties' objectives, as Derek Sivers intended to provide a bridge loan to cannabis businesses that was secured by interest in Maya Cinemas stock. *Id.* at 8-9. Defendants assert that only Fund III had cannabis businesses in its portfolio. *Id.* (citing Wilkins Dep. II 15:15-22, 18:10-12, 18:17-19:11, 32:6-25). Defendants also state that only Fund II held Maya Cinemas stock. *Id.* at 9 (citing Wilkins Dep. II 16:4-12). Without disputing this, Plaintiff responds with evidence that the parties intended the funds go to a particular cannabis business, Trellis, not merely any cannabis business, and that the funds were not sent to Trellis. Pl. Resp. 8 (citing Wilkins Dep. I 31:18-20, 39:3-40:14; Wilkins Dep. II 47:14-14, 59:11-62:24, 68:9-69:21, 74:11-16). Defendants counter that this argument is untimely and prejudicial because it exceeds the scope of the allegations in Plaintiff's complaint. Def. Reply 3-4, ECF 66.

The Court first addresses Defendants' contention that Plaintiff has exceeded the scope of the complaint. Plaintiff's amended complaint alleges that "Wilkins knowingly and purposefully failed to disclose to Sivers that the $700,000.00 he loaned to the Fund had been transferred to

SCI III and that the Fund had no assets or means to repay the Note." Am. Compl. ¶ 14. It also alleges that "Wilkins, through his entity SCI III, upon information and belief, used the entire $700,000.00 loaned by Sivers to invest in high risk cannabis enterprises in the States of Oregon and Maryland." *Id.* ¶ 13. Plaintiff's fraudulent transfer claim alleges that "[a]t the direction of Wilkins, the Fund transferred $700,000.00 to SCI III without receipt of reasonably considerable [sic] value in exchange for the payment." Am. Compl. ¶ 40. The amended complaint does not allege fraud based on subsequent transfers from Fund III to other entities. *Id.* ¶¶ 39-44. Nor do other allegations in the amended complaint put Defendants on notice of Plaintiff's expanded claim. Plaintiff's argument is outside the scope of the complaint.

An argument made in opposition to a motion for summary judgment that is outside the scope of the complaint is construed as a motion to amend the pleadings under Federal Rule of Civil Procedure 15. *Desertrain v. City of Los Angeles*, 754 F.3d 1147, 1154 (9th Cir. 2014). Once the period for amending pleadings as a matter of course has elapsed, "a party may amend its pleading only with the opposing party's written consent or with the court's leave." Fed. R. Civ. P. 15(a)(2). "The court should freely give leave when justice so requires." *Id.* However, the court need not grant leave to amend where the amendment "(1) prejudices the opposing party; (2) is sought in bad faith; (3) produces an undue delay in litigation; or (4) is futile." *AmerisourceBergen Corp. v. Dialysist West, Inc.*, 465 F.3d 946, 951 (9th Cir. 2006).

Defendant opposes leave to amend based on prejudice and undue delay. Def. Reply 3-4. Delay is not enough on its own to justify denial of leave to amend. *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 186 (9th Cir. 1987). "[T]he consideration of prejudice to the opposing party carries the greatest weight." *Sonoma Cnty. Ass'n of Retired Emps. v. Sonoma Cnty.*, 708 F.3d 1109, 1117 (9th Cir. 2013) (internal quotations omitted). Amendments that add causes of

action or legal theories requiring further discovery may prejudice the opposing party. *Ascon Properties, Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1161 (9th Cir. 1989); *Zivkovic v. S. California Edison Co.*, 302 F.3d 1080, 1087 (9th Cir. 2002).

In *Desertrain*, the Ninth Circuit held that the district court should have considered the plaintiffs' vagueness challenge to a provision of the Los Angeles Municipal Code that was not alleged in the pleadings. 754 F.3d at 1154. There was no undue delay because the defendants only provided key documents about their enforcement policies late in the discovery period, so the plaintiffs did not fully understand the issues until then. *Id.* There was no prejudice to the defendants because repeated questioning in depositions about limiting criteria for enforcement put the defendants on notice of the claim, and plaintiffs' counsel then emailed defense counsel weeks before the parties filed cross motions for summary judgment to advise that plaintiffs would raise a vagueness challenge, and again notified defense counsel the day before filing the motion. *Id.* at 1154-55. The issue was fully argued in those motions. *Id.*

Here, Defendants have shown that Plaintiff's expanded argument prejudiced them. Defendants targeted their interrogatories to the transfer from Fund II to Fund III. Asai Decl. Mot. Summ. J. Ex. 7 at 11-13. Plaintiff's responses to Defendants' interrogatories likewise focused on the transfer from Fund II to Fund III. *Id.* at 15-16. At Wilkins's first deposition, on July 21, 2021, which occurred in the context of jurisdictional discovery, counsel for Plaintiff asked numerous questions about the various cannabis businesses in which Defendants invested and where they were located. *See generally* Wilkins Dep. I. At that deposition, Defendant Wilkins's answers suggested that the Sivers funds had been invested in Trellis in Oregon. Wilkins Dep. I 42:3-8. Bank statements obtained during the regular discovery period indicate otherwise. Warren Decl. Resp. Summ. J. Ex. 2 at 3 (showing the majority of the funds were sent to Doctor's Orders

Maryland). However, after receiving these bank statements, Plaintiff did not seek leave to amend

its complaint or amend its discovery requests or responses. Def. Reply 4. At Wilkins's second

deposition, on November 2, 2022, Plaintiff asked questions that pointed to concern with the

ultimate destination of the funds. Wilkins Dep. II 47:14-19, 59:11-62:24, 68:9-69:21, 74:11-16.

This deposition occurred nine days before dispositive motions were due in this case.

 This case is similar to *Desertrain* in some respects. Plaintiff did not discover enough facts

to adequately allege its claims until it received bank statements showing where the funds had

been sent. Questions in the second deposition of Defendant Wilkins, which occurred shortly

before dispositive motions were due, put Defendants on notice to some degree that Plaintiff was

interested in the ultimate destination of the investment. However, Plaintiff did not advise

Defendants that it was going to argue that subsequent transfers were fraudulent. In contrast,

counsel in *Desertrain* provided notice weeks in advance of the summary judgment deadline and

again the day before the deadline. 754 F.3d at 1154. The issue required no further discovery and

was fully argued on summary judgment. *Id.* at 1155. That is not the case here. The Court

concludes that considering Plaintiff's argument about fraudulent transfers from Fund III to other

entities would prejudice Defendants. The Court therefore declines to consider this argument.

 Evaluating the transfer from Fund II to Fund III, the Court concludes that Defendants

have shown a legitimate purpose. Plaintiff does not dispute that the parties intended the loan to

go to cannabis businesses with which Wilkins had a relationship, or that the parties intended the

loan to be secured by interest in Maya Cinemas stock. Def. Mot. 8-9; Pl. Resp. 8. The evidence

establishes that these were the purposes of the agreement. Derek Sivers testified in his deposition

that he thought he would be loaning funds to Wilkins's "marijuana growing businesses." Sivers

Dep. 34:13-16. Dennis Sivers emailed Wilkins to request that the loan be secured by Maya

Cinemas stock, and Wilkins agreed. Asai Decl. Mot. Summ. J. Ex. 3 at 1. Dennis Sivers's office

drafted the Note. Sivers Dep. 29:11-13; Asai Decl. Mot. Summ. J. Ex. 4. Wilkins then advised

Dennis and Derek Sivers by email: "The note is structured such that the debtor needs to control

the collateral. Therefore I am changing the Borrower to SCI Fund II, LLC as it is the entity that

owns the Series B & B-1 Maya stock." Asai Decl. Mot. Summ. J. Ex. 4 at 1. Plaintiff does not

dispute that only Fund III held cannabis interests. The only reasonable conclusion based on the

evidence is that if Dennis Sivers had not requested collateralization by Maya Cinemas stock, the

funds would have been sent directly to Fund III. There is no direct evidence of actual intent to

defraud with respect to the transfer from Fund II to Fund III. The facts show that the loan was

structured to achieve the goals of the lender and borrower and that the transfer from Fund II to

Fund III was necessary to achieve those goals.

b.     Circumstantial Evidence

Defendants' evidence of a legitimate purpose for the transfer is sufficient to overcome

Plaintiff's showing on the statutory badges of fraud. *See* Pl. Resp. 8-10. Several factors are

present, while others on which Plaintiffs rely do not support an inference of fraud.

1)     Factors (a) and (b)

These factors permit an inference of fraud where "[t]he transfer or obligation was to an

insider" and "[t]he debtor had retained possession or control of the property transferred after the

transfer." O.R.S. 95.230(2)(a)-(b). Defendants do not dispute that Defendant Wilkins is an

insider under the statute. Def. Reply 8. Defendant Wilkins is a managing director of SCI

Management, which manages both Fund II and Fund III. Wilkins Decl. ¶ 2, ECF 62. At

minimum, Wilkins had some level of control over the debtor. *See* O.R.S. 95.200(7)(b)(C). For

the same reasons, Wilkins retained control of the property transferred after the transfer.

Defendants' evidence explaining the purpose of the transfer outweighs the presence of these

factors: the transfer needed to occur in order to facilitate both collateralization by Maya Cinemas

stock and investment in cannabis enterprises as the parties intended.

### 2)    Factor (j)

This factor permits an inference of fraud where "[t]he transfer had occurred shortly

before or shortly after a substantial debt was incurred." O.R.S. 95.230(2)(j). The transfer from

Fund II to Fund III occurred relatively soon after Derek Sivers sent the money to Fund II. Derek

Sivers wired the funds to Fund II on January 13, 2017. Warren Decl. Resp. Summ. J. Ex. 1 at 3.

The majority of the funds, $650,000, were transferred to Fund III on January 24, 2017. *Id.* Ex. 1

at 3, Ex. 2 at 3. The promissory note from Fund III to Fund II is dated the same day as the initial

Note. Am. Compl. Ex. 1 at 1 (promissory note from Fund II to Derek Sivers for $700,000 dated

January 10, 2017); Warren Decl. Mot. to Dismiss Ex. 9 at 4 (promissory note from Fund III to

Fund II for $700,000 dated January 10, 2017). Again, as Defendants have shown a legitimate

purpose for the transfer from Fund II to Fund III, this overcomes the timing of the transfer as a

badge of fraud. A prompt transfer promoted the ultimate goal of the investment: to send the

funds to cannabis enterprises.

### 3)    Factor (c)

This factor supports an inference of fraud if the transfer was concealed and favors the

debtor if the transfer was disclosed. O.R.S. 95.230(2)(c). Plaintiff asserts that the transfer from

Fund II to Fund III was not disclosed to Derek Sivers. Pl. Resp. 9. As discussed above,

Defendant Wilkins emailed Derek and Dennis Sivers to advise that he was changing the

borrower to Fund II solely in order to permit Maya Cinemas stock to be used as collateral. This

email served to disclose the need to transfer the funds in order to both allow collateralization by

Maya Cinemas Stock and facilitate investment in cannabis enterprises. This factor supports a finding that there was no fraud.

4)    Factor (i)

This factor permits an inference of fraud where "[t]he debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred." O.R.S. 95.230(2)(i). "A debtor who is generally not paying debts of the debtor as they become due is presumed to be insolvent." O.R.S. 95.210(2). Plaintiff asserts that Fund II is presumed insolvent because the Notes have not been timely paid. Pl. Resp. 9 (citing O.R.S. 95.210(1)-(2)). The parties discuss the solvency of Fund II in greater detail when addressing Plaintiff's constructive fraud claims. Def. Mot. 11; Pl. Resp. 12; Def. Reply 7-8. Their arguments are equally applicable in this context, so the Court considers them here.

Plaintiff has not provided enough evidence for the Court to presume that Fund II was insolvent at the time of the transfer. Plaintiff cites its unopposed motion for summary judgment, which establishes only that the parties agree that the Notes were not paid. *See* Pl. Resp. 12. The failure to repay a single loan does not support a presumption that Fund II was insolvent at the time of the transfer over a year earlier. Plaintiff has provided no evidence that Fund II was generally failing to pay its debts at the time of the transfer or shortly thereafter, which is the relevant period for this badge of fraud.

Defendants assert that at the time of the transfer, Fund II was not insolvent. Def. Mot. 11. Defendants rely on statements from Wilkins that Fund II had an estimated cost value of $4 million at the time of the transfer. Def. Mot. 11 (citing Wilkins Decl. ¶¶ 3, 7, ECF 62). Defendants also rely on the undisputed facts that Fund II holds interest in Maya Cinemas stock and that Maya Cinemas is an operational business. Def. Reply 7-8 (citing Sivers Dep. 37:21-

38:8); Asai Decl. Reply Summ. J. Ex. 10 (showing locations of Maya Cinemas theaters). It is undisputed that the Notes from Fund II to Derek Sivers are collateralized by shares of Maya Cinemas stock. Am. Compl. Ex. 1 at 2, Ex. 2 at 2. Defendant is correct that Plaintiff has not disputed that Maya Cinemas stock has value. Def. Reply 7-8. *See also* Sivers Dep. 37:21-38:8 (stating that he had not investigated the value of the Maya Cinemas stock held as collateral).

Plaintiff highlights the "one-sided" nature of Defendant Wilkins's statements in his declaration but provides no evidence to contradict them. Pl. Resp. 12. While Plaintiff cites to bank statements for Fund II showing a low balance around the time the loan was made, Warren Decl. Summ. J. Ex. 1 at 1-9, this information does not contradict Defendant Wilkins's statement that Fund II had a cost value of $4 million at the time of the transfer. Viewing the evidence in the light most favorable to Plaintiff, Fund II's assets at the time of the transfer were primarily in the form of stock in the companies in its portfolio and were thus less fungible. This points to a possible delay in repaying a loan if shares of stock needed to be sold, but does not point to the conclusion that Fund II was insolvent.

Plaintiff also cites in passing to a portion of Defendant Wilkins's deposition in which he admitted that he sought to extend the Note in January 2018 due to unexpected difficulties in the cannabis market. Pl. Resp. 9 (citing Wilkins Dep. II 60:15-62:20). As it is undisputed that only Fund III held cannabis interests, Wilkins's admission does not provide a basis to infer that Fund II was insolvent. Furthermore, subsequent unanticipated difficulties in an investment do not provide a basis to infer insolvency at the time of the transfer.

Finally, Plaintiff asserts that Defendants have not produced any financial statements in discovery. Pl. Resp. 9, 12. *See also* Warren Decl. Resp. Summ. J. ¶ 8, Ex. 7 at 9. "If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts

essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." Fed. R. Civ. P. 56(d). Plaintiff's counsel submits in her declaration that she requested financial statements for Fund II and that Defendants have not produced them. Warren Decl. Resp. Summ. J. ¶ 8. However, Plaintiff does not request relief under Rule 56(d). Plaintiff relies on the record as it currently stands. *See* Pl. Resp. 12. In the absence of a motion from Plaintiff requesting relief and explaining why it is warranted, the Court will decide this issue on the record before it.[1]

The Court concludes that Plaintiff has not produced sufficient evidence to show a genuine dispute of material fact on the solvency of Fund II. Plaintiff submits no evidence to rebut Defendant Wilkins's assertion of the Fund's cost value at the time of the transfer. Plaintiff submits no evidence that Fund II was not paying its debts at the time of the transfer. The fact that Fund II ultimately failed to repay the loan to Derek Sivers is insufficient on its own for a jury to reasonably infer that Fund II was insolvent at the time of the transfer. *See Kuderer v. United States*, 739 F. Supp. 1422, 1427 (D. Or. 1990) (analyzing lease alleged to be analogous to fraudulent transfer and finding no evidence that promise to make mortgage and tax payments was inadequate consideration despite lack of evidence that these payments were ultimately made). *See also Stefanchik*, 559 F.3d at 929 (holding that a "mere scintilla" of evidence is insufficient to overcome summary judgment); *Brit. Airways Bd. v. Boeing Co.*, 585 F.2d 946, 952 (9th Cir. 1978) ("A mere scintilla of evidence will not do, for a jury is permitted to draw

---

[1] The Court notes that the parties have had ample opportunity to engage in discovery. The Court previously extended the discovery deadlines at Plaintiff's request. Order, ECF 51. The information Plaintiff seeks has been relevant to its claims since the beginning of this case, yet Plaintiff did not previously notify the Court that Defendants were failing to respond to discovery requests or seek the Court's assistance in resolving any discovery dispute.

only those inferences of which the evidence is reasonably susceptible; it may not resort to speculation."). Factor (i) does not support an inference of fraud.

5)    Factors (e) and (h)

Finally, Plaintiff argues in passing that factors (e) and (h) might support an inference of fraud. Pl. Resp. 10. Factor (e) permits an inference of fraud where "[t]he transfer was of substantially all the debtor's assets." O.R.S. 95.230(2)(e). Plaintiff makes no argument on this factor and does not point the Court to any portions of the record to support a finding that this factor applies. The Court therefore declines to consider this factor. *See* Fed. R. Civ. P. 56(c)(1)(A), (3).

Factor (h) considers whether "[t]he value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred." O.R.S. 95.230(2)(h). Plaintiff does address this legal issue in briefing its constructive fraud claims, which also use the "reasonably equivalent value" standard. Pl. Resp. 12-14. The Court will consider this factor.

In exchange for the Sivers funds, Fund III gave Fund II an interest-bearing promissory note for $700,000, the same amount Sivers wired to Fund II. Warren Decl. Mot. to Dismiss Ex. 9 at 4 (promissory note from Fund III to Fund II for $700,000 dated January 10, 2017). Defendants argue that this was adequate consideration because the note is valid and at the time of the transfer, Fund III held interests in multiple businesses. Def. Mot. 11 (citing Wilkins Dep. II at 18:17-19:1). Without disputing the validity of this promissory note or the interests Defendants allege Fund III held, Plaintiff responds that the note is not reasonably equivalent value. Pl. Resp. 12-14.

The Court must resolve two issues: first, whether the promissory note qualifies as "value" and second, if it does, whether it qualifies as "reasonably equivalent value." The statute provides: "Value is given for a transfer or an obligation if in exchange for the transfer or obligation property is transferred or an antecedent debt is secured or satisfied, but value does not include an unperformed promise made otherwise than in the ordinary course of the promisor's business to furnish support to the debtor or another person." O.R.S. 95.220(1). The statute does not define "reasonably equivalent."

With respect to value, the Court previously observed that "the language of the statute may permit a finding that an 'unperformed promise' constitutes value so long as it was made in the ordinary course of the promisor's business." Op. & Ord. 22. The Court also recognized that courts are split on this issue. *Id.* After reviewing the available persuasive authority, the Court concludes that the promissory note from Fund III to Fund II qualifies as value. The language of O.R.S. 95.220(1) mirrors the Uniform Fraudulent Transfer Act ("UFTA") definition of "value." UFTA § 3(a) (Unif. L. Comm'n 1984). The comments to the UFTA provision state that UFTA's definition of "value" was intended to include some unperformed promises. UFTA § 3 cmt. 4. The unperformed promises generally held not to constitute value are promises by an individual to support a parent or other transferor. *Id. See also Bowman v. El Paso CGP Co.*, 431 S.W.3d 781, 786 (Tex. App. 2014) (interpreting analogous provision in Texas law). Thus, the general interpretation of the carveout provision is that unperformed promises are not value as a matter of law where they are both (1) made outside the ordinary course of business and (2) intended to furnish support to another person. The promissory note from Fund III to Fund II does not fall within this carveout. It was not made to furnish support to another person: it was a promise from one venture capital fund to another.

With respect to reasonable equivalency, Plaintiff provides no legally sufficient basis to question the relative value of the note at the time it was executed. The note is for the same amount as the initial Note between Derek Sivers and Fund II. Furthermore, Plaintiff does not dispute the validity of the note or the interests that Fund III held when the note was issued. Instead, Plaintiff argues that reasonably equivalent value is determined from the creditor's perspective. Pl. Resp. 13. Even if this is true, Plaintiff points to no facts in the record showing that the promissory note from Fund III to Fund II was not reasonably equivalent value from the perspective of Fund II—or indeed Derek Sivers as the ultimately interested party—at the time it was executed. Although Fund III later failed to pay the loan, it would be speculation to conclude that the note was therefore worthless when it was executed, as Plaintiff points to no evidence supporting such a conclusion. Plaintiff's bare assertion that the note is not reasonably equivalent value does not create a genuine dispute of material fact. This factor is at best neutral and likely supports a finding that the transfer was not fraudulent.

Ultimately, Defendants have shown a legitimate purpose for the transfer from Fund II to Fund III: to direct the funds to cannabis businesses as the parties intended and to permit the loan to be collateralized by Maya Cinemas stock as Dennis Sivers requested on behalf of Derek Sivers. Defendants have shown an absence of actual intent to defraud and are entitled to summary judgment on Plaintiff's claim under O.R.S. 95.230(1)(a).

ii. Claims under O.R.S. 95.230(1)(b) and O.R.S. 95.240

Plaintiff's fraudulent transfer claim is also based on constructive fraud. Under O.R.S. 95.230(1)(b) and O.R.S. 95.240, a plaintiff can demonstrate "constructive fraud due to [1] inadequate consideration for the property conveyed and [2] the insolvency or near insolvency of the debtor." *Doughty v. Birkholtz*, 156 Or. App. 89, 96, 964 P.2d 1108 (1998). While largely

similar, the provisions also have differences. O.R.S. 95.230(1)(b) does not require complete insolvency, while O.R.S. 95.240 does. In addition, O.R.S. 95.240(2), which covers transfers to insiders,[2] further requires that the transfer between the debtor and transferee be for *present*, reasonably equivalent value. "A transfer is made for present value if the exchange between the debtor and the transferee is intended by them to be contemporaneous and is in fact substantially contemporaneous." O.R.S. 95.220(3). As previously stated, fraudulent intent is measured at the date of the transfer. *Mitchell*, 1993 WL 469260, at *6.

Defendants argue that there is no evidence of constructive intent to defraud because "it is undisputed that Fund II was not insolvent as a result of the transfer and received reasonably equivalent value from Fund III through the promissory note" from Fund III to Fund II. Def. Mot. Summ. J. 10.[3] The Court's analysis of the statutory badges of fraud resolves these claims. As discussed above, Plaintiff has failed to show a genuine dispute of material fact on whether Fund II was insolvent. *Supra* at 21. The insolvency of the debtor is required for claims under O.R.S. 95.240(1) and (2), so Defendants are entitled to summary judgment on those claims. Plaintiff has also failed to show a genuine dispute of material fact on whether the promissory note from Fund III to Fund II constitutes reasonably equivalent value. *Supra* at 24. Defendants are therefore entitled to summary judgment on Plaintiff's claim under O.R.S. 95.230(1)(b).

In sum, Defendants are entitled to summary judgment on Plaintiff's fraudulent transfer claims. The Court now turns to Plaintiff's securities claims.

---

[2] It is undisputed that Defendant Wilkins is an insider for the purposes of the statute. Pl. Resp. 8; Def. Reply 8.

[3] Plaintiff argues that Defendants failed to address its claim under O.R.S. 95.240 in their motion, and further that the Court should grant summary judgment to Plaintiff. Pl. Resp. 10-15. The Court agrees with Defendants that they did address this claim. Def. Reply 6 n.2. Defendants are also correct that under the Local Rules, Plaintiffs may not move for summary judgment in a response brief. Def. Reply 3 n.1 (citing LR 7-1(b)).

B.      Securities Claims

Plaintiff alleges that Defendant Wilkins made material omissions of fact in violation of

Oregon securities law when selling the Note and the Amended Note to Derek Sivers. Am.

Compl. ¶¶ 53-67.

Oregon securities law imposes liability on a person who

sells or successfully solicits the sale of a security in violation of ORS 59.135 (Fraud
and deceit with respect to securities or securities business) (1) or (3) or by means
of an untrue statement of a material fact or an omission to state a material fact
necessary in order to make the statements made, in light of the circumstances under
which they are made, not misleading (the buyer not knowing of the untruth or
omission), and who does not sustain the burden of proof that the person did not
know, and in the exercise of reasonable care could not have known, of the untruth
or omission.

O.R.S. 59.115(1)(b). "Every person who directly or indirectly controls a seller liable

under subsection (1) of this section, every partner, limited liability company manager, including

a member who is a manager, officer or director of such seller, every person occupying a similar

status or performing similar functions, and every person who participates or materially aids in

the sale" is jointly and severally liable to the same extent as the seller. O.R.S. 59.115(3).

Finally, O.R.S. 59.135(2) and (3)[4] provide that it is unlawful "[t]o make any untrue

statement of a material fact or to omit to state a material fact necessary in order to make the

statements made, in the light of the circumstances under which they are made, not misleading"

and "[t]o engage in any act, practice or course of business which operates or would operate as a

fraud or deceit upon any person."

Defendants base their motion for summary judgment on three arguments: (1) Oregon

securities law does not apply because the Notes were not bought or sold in Oregon, (2) the Notes

---

[4] Plaintiff's amended complaint cites O.R.S. 59.135(1) and (3), but the language used in the
complaint corresponds to subsections (2) and (3) of the statute. *See* Am. Compl. ¶ 65.

are not securities as a matter of law, and (3) Defendant Wilkins made no material misstatements or omissions of fact as a matter of law. Def. Mot. 12-16. The Court concludes that the first of these arguments is dispositive, and Defendants are entitled to summary judgment on Plaintiff's securities claims.

i.    Whether Oregon Law Applies

Defendants argue that they should be granted summary judgment on Plaintiff's securities claims because the Oregon securities statute does not apply. Def. Mot. 12; Def. Reply 9-11. At the motion to dismiss stage, the Court declined to address this issue because Defendants did not specify which state's law should apply. Op. & Ord. 24-25. The Court now concludes that the applicability of O.R.S. 59.115 is governed by O.R.S. 59.335 and 59.345. *See* O.R.S. 15.405 ("ORS 15.400 (Definitions for ORS 15.400 to 15.460 to 15.460 (Commentary) govern the choice of law applicable to noncontractual claims when a choice between or among the laws of more than one state is at issue. ORS 15.400 (Definitions for ORS 15.400 to 15.460) to 15.460 (Commentary) do not supersede the provisions of other Oregon statutes that expressly designate the law governing a particular noncontractual claim."). The parties have briefed the applicability of O.R.S. 59.335 and 59.345. *See* Def. Mot. 12; Pl. Resp. 21-22; Def. Reply 9-11.

Under these provisions, O.R.S. 59.115 "appl[ies] to persons who sell or offer to sell" a security either when "[a]n offer to sell is made in this state" or "[a]n offer to buy is made and accepted in this state." O.R.S. 59.335(1). An offer to buy or sell is made in Oregon "whether or not either party is then present in this state, when the offer: (a) [o]riginates from this state; or (b) [i]s directed by the offeror to this state and received at the place to which it is directed (or at any post office in this state in the case of a mailed offer)." O.R.S. 59.345(1). An offer to buy or sell is accepted in Oregon "when acceptance: (A) [i]s communicated to the offeror in this state; and (B)

[h]as not previously been communicated to the offeror, orally or in writing, outside this state." O.R.S. 59.345(2)(a). "Acceptance is communicated to the offeror in this state, whether or not either party is then present in this state, when the offeree directs it to the offeror in this state reasonably believing the offeror to be in this state and it is received at the place to which it is directed (or at any post office in this state in the case of a mailed acceptance)." O.R.S. 59.345(2)(b).

The parties focus on whether an offer to sell or buy the Notes "originated" in Oregon. Pl. Resp. 21; Def. Reply 10. As Defendants note, the statute does not define "originate." Def. Reply 10. When an Oregon statute does not define terms, Oregon courts "typically resort to dictionary definitions to discern their meaning." *State v. Corcilius*, 294 Or. App. 20, 23, 430 P.3d 169 (2018). A dictionary definition should be considered in the context of the statute to determine whether it makes sense. *Id.* Defendants rely on a dictionary definition of "originate" that reads "to cause the beginning of: give rise to: initiate." Def. Reply 10 (citing *Webster's Third New Int'l Dictionary* 1953 (unabridged ed. 1993)). The Court concludes that this definition makes sense in the context of the statute: the Oregon securities laws govern if an offer to buy or sell a security arises or is initiated in Oregon, even if neither party is in Oregon when the offer is ultimately made. *See* O.R.S. 59.345(1). This is consistent with the overall focus of the statute on the existence of an offer or acceptance with a sufficient tie to Oregon.

In this case, Derek Sivers was living outside the United States when he offered to buy the Note. Sivers Dep. at 8:5-18. Wilkins resides in Maryland and did not travel to Oregon to execute the Notes. Wilkins Dep. II 8:18-24; Wilkins Decl. ¶¶ 3-4, ECF 24. Plaintiff points to no evidence that either party was in Oregon during negotiations. Plaintiff instead relies on three different connections to Oregon. First, Derek Sivers's father, Dennis Sivers, was located in Oregon and

facilitated the investment as the agent of Derek Sivers. Pl. Resp. 21. The parties agree that Dennis Sivers was Derek Sivers's agent in negotiating the initial Note. Pl. Resp. 23; Def. Reply 13. Dennis Sivers contacted Derek Sivers to propose that he make the investment. Sivers Dep. 28:24-29:3. Dennis Sivers's office in Oregon drafted the initial Note with input from Defendant Wilkins. Sivers Dep. 29:11-13; Asai Decl. Mot. Summ. J. Ex. 4. Second, Plaintiff alleges that Derek Sivers intended to invest in Oregon companies. Pl. Resp. 21. Third, "the Notes themselves contemplate existence in Oregon." *Id.*

Plaintiff relies on *State v. Jacobs*, in which the Oregon Court of Appeals stated that "the Oregon Securities Law applies if there is sufficient evidence from which the trier of fact could conclude that the offers to sell . . . originated in Oregon." 55 Or. App. 406, 410, 637 P.2d 1377 (1981). In *Jacobs*, the defendant, a California resident, met with potential investors in California, while another participant in the scheme, Marshall, showed the investors the land in which they proposed to invest, which was located in Oregon. *Id.* at 408. The Oregon Court of Appeals concluded that the jury could have reasonably found that the offers to sell the interest in land originated in Oregon because there were sufficient facts showing that the defendant was an agent of Marshall, and Marshall resided in Oregon and transacted business from Oregon. *Id.* at 411.

The Court agrees with Defendants that *Jacobs* does not apply here. Def. Reply 9-10. In *Jacobs*, the defendant was an out-of-state agent acting on behalf of Oregon residents who were the sellers of the investment. The agency relationship and the actions of the sellers in Oregon were key to the Oregon Court of Appeals' decision; the location of the land in Oregon was only incidentally relevant.[5] Here, Dennis Sivers, the Oregon connection, was an agent and not a

---

[5] At least one other district court has interpreted *Jacobs* similarly. *Barnebey v. E.F. Hutton & Co.*, 715 F. Supp. 1512, 1540 (M.D. Fla. 1989) (interpreting identical provision in Oklahoma securities law).

principal. Furthermore, he was an agent of the lender (buyer), not the borrower (seller). *Jacobs* does not provide a basis to impute Dennis Sivers's Oregon connections to Defendant Wilkins.

Based on the foregoing, the Court concludes that none of the three Oregon connections on which Plaintiff relies, whether considered individually or cumulatively, is sufficient to show that the Oregon securities laws cover the transactions at issue here. Dennis Sivers's role in the process, however substantial, is insufficient to meet the statutory requirements. O.R.S. 59.115 applies to sellers of securities when either (1) the offer to sell is made in Oregon, or (2) the offer to buy is made *and* accepted in Oregon. O.R.S. 59.335. The statute is precise on this point, and the facts here meet neither set of requirements.

With respect to (1), it is undisputed that Defendant Wilkins was not in Oregon for the negotiation or execution of the Notes. No facts indicate—and Plaintiff does not assert—that Dennis Sivers was an agent of Defendant Wilkins. His Oregon connections cannot be imputed to Wilkins to satisfy the origination requirement. Similarly, with respect to (2), no evidence indicates that any offer by Derek Sivers to buy the Notes was accepted in Oregon, as Defendant Wilkins was in Maryland when he negotiated and executed the Notes. Thus, even if the Court were to conclude that the offer to buy the initial Note was made in Oregon by Dennis Sivers on behalf of Derek Sivers,[6] this would still be insufficient under the statute, as the offer to buy must be both made and accepted in Oregon for Oregon securities law to apply.

Defendant is also correct that the Oregon connection is even weaker with respect to the Amended Note. Def. Reply 10. Plaintiff does not point to any facts showing that either Derek Sivers or Defendant Wilkins was in Oregon during the negotiations for the Amended Note.

---

[6] The Court further doubts that this proposition is consistent with Oregon law. *Jacobs* relied on the location of the sellers, not their agent.

Furthermore, Plaintiff points to no evidence that Dennis Sivers was involved in negotiating or executing the Amended Note. The record includes an email from Defendant Wilkins to Derek Sivers regarding the amended note; the email does not mention Dennis Sivers's involvement in negotiations, and he is not a party to the email. Warren Decl. Resp. Summ. J. Ex. 6.

The other two Oregon connections on which Plaintiff relies do not bolster its case. Nothing in the statutory language or the caselaw supports Plaintiff's contention that the location of the companies for which the investment was destined is in itself relevant in assessing the applicability of the Oregon securities statute. *Jacobs* is instructive on this point, as the Oregon Court of Appeals based its decision on the sellers' residence and activities in Oregon and did not rely on the fact that the object of the investment was also in Oregon. 55 Or. App. at 411.

Finally, the Court has already concluded that the securities claims are noncontractual and thus not governed by the choice of law provisions in the Notes. Op. & Ord. 24. Plaintiff has pointed to no caselaw holding that a choice of law clause in a Note should be considered in determining whether the offer to buy or sell originated in a particular state. Such evidence may be relevant when evaluating personal jurisdiction, but it does not point to the location of an offer or acceptance. Ultimately, because the Court has already concluded that the other Oregon connections on which Plaintiff relies are insufficient, the choice of law clause is insufficient on its own to show that the Note originated in Oregon. To hold otherwise would allow the clause to trump the statute and defeat the intent of the Oregon Legislature. And to the extent that Plaintiff relies on the "Portland, OR" legend at the top of the Notes, Am. Compl. Ex. 1 at 1, Ex. 2 at 1, this language is likewise insufficient to show that the Notes originated in Oregon where neither

party to the Notes was in Oregon for the negotiation or execution of the Notes or resided in Oregon during the relevant period.[7]

Because the Oregon securities laws do not apply to the Notes, Defendants are entitled to summary judgment on Plaintiff's securities claims.

## CONCLUSION

The Court GRANTS Plaintiff's Unopposed Motion for Partial Summary Judgment [58]. The Court GRANTS Defendants' Motion for Partial Summary Judgment [61]. The parties are to contact the Court within seven days of the date of entry of this Opinion and Order to schedule a status conference.

IT IS SO ORDERED.

DATED:___February 17, 2023___.


_____
MARCO A. HERNÁNDEZ
United States District Judge

---

[7] Other district courts applying the same uniform provisions have also required more than simply a nexus to the state whose laws the plaintiff seeks to apply. *E.g.*, *McCullough v. Leede Oil & Gas, Inc.*, 617 F. Supp. 384, 389 (W.D. Okla. 1985) (holding that the Oklahoma Securities Act did not apply to the transaction although the defendant mailed the plaintiff certain correspondence during negotiations from its branch office in Oklahoma).